[Civ. No. 14259.   First Dist., Div. One.   June 5, 1950.]

Estate of DAVID GLASSGOLD, Deceased.   ROSE GLASS-GOLD, an Incompetent Person, etc., Appellant, v. MORRIS GLASSGOLD, Respondent.

[Civ. No. 14269.   First Dist., Div. One.   June 5, 1950.]

ROSE GLASSGOLD, an Incompetent Person, etc., Petitioner, v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Robert E. Hatch, Stimmel & Stimmel and Lelia R. Leep for Petitioner and Appellant.

Philip S. Ehrlich, Albert A. Axelrod and R. J. Hecht for Respondents.

PETERS, P. J.—These two proceedings have been consolidated for purposes of appeal. 1 Civil 14259 is an appeal from an order of the Probate Court denying a motion made under section 473 of the Code of Civil Procedure to vacate the final decree of distribution in the estate of David Glassgold, while 1 Civil 14269 is an attempt to have the order of denial annulled by means of certiorari.

Morris Glassgold is the brother of David Glassgold, deceased. In 1924, David married Rose. In 1930, Rose secured an interlocutory decree of divorce. Both parties were represented by counsel. The final decree was not entered during David's lifetime, but after David's death in 1947, and after the final decree of distribution had been entered in March of 1948, Morris had a judge of the Superior Court of San Francisco enter a final decree *nunc pro tunc* as of many years prior to the death of David. Another judge of the same court subsequently, on the motion of Rose, set aside the *nunc pro tunc* order previously entered. Thus, during the times here relevant, no final decree of divorce has been entered.

David died on August 9, 1947, in San Francisco. Morris petitioned for letters of administration on August 13, 1947,

averring that David died intestate, that he was the sole heir of David, and that he was entitled to the entire estate. The name of Rose was not mentioned in the petition. Notice of the time and place for hearing was given in the manner required by law. Morris was appointed administrator on August 28, 1947. Notice to creditors was published as required by law, and all other statutory notices given. Morris filed his final account and petition for final distribution on February 28, 1948. The final decree of distribution awarding him the entire estate as sole heir at law was filed on March 17, 1948. Admittedly, Rose was not given actual notice of any of these proceedings.

On September 8, 1948, just under the six-month period prescribed by section 473 of the Code of Civil Procedure, Rose filed a notice of motion to vacate the final decree, from which no appeal had been taken and which was then final. She averred that she was the surviving spouse of David, and, as such, entitled to all the community property, and to one-half of the separate property. The motion charged that the final decree of distribution had been made as a result of ''mistake, surprise, inadvertence and/or excusable neglect''; that Morris misrepresented himself as David's sole heir when he knew or should have known that Rose was alive and David's wife at the time of his death. Her affidavit filed in support of the notice of motion averred that she was the widow of David; that she was living in San Francisco at the time of David's death; that her name and address were listed in the telephone directory; that Morris knew she was alive at the time of David's death, and knew that she was then the wife of David; that she received no notice of the probate proceedings until more than 60 days after March 17, 1948, and therefore had no opportunity to act until after the time for appeal from the decree of final distribution had expired; that immediately upon learning of the final decree she employed counsel.

Morris filed a lengthy counteraffidavit. So far as pertinent here, he denied that the marriage had not been dissolved, and averred that no appeal had been taken from the interlocutory decree of divorce; that at no time after the interlocutory was granted did the parties cohabit, and they were never reconciled. He admitted that at the time of David's death he knew Rose was alive, but averred that he believed a final decree of divorce had been entered; that David, before his death, labored under the same belief; that he did not know

that no such decree had been entered until after the decree of final distribution had been entered. On information and belief he averred that on the date of David's death Rose was informed of it by the hospital. He also averred that notices of the funeral services appeared in the San Francisco newspapers; that at no time during probate did Rose make any claim; that Rose knew of the pendency of those proceedings long before September 7, 1948. He denied that Rose did not receive official notice of the proceedings.

Rose filed a second affidavit in which she averred that since 1936 she has been confined, by reason of a heart condition, either in hospitals or in her home except for occasional visits to her doctor; that on August 7, 1947, she returned to her home from the hospital where she had been confined because of a stroke, and was confined to her bed at home for an indefinite time; that at 3 a. m. of a certain morning shortly after she returned home from the hospital she received a telephone call telling her that something had happened to David; that she told the caller that she was ill and helpless and referred him to Morris; that the telephone call caused a relapse and she was advised by her physicians that any further excitement might be fatal; that she is not familiar with probate proceedings and had always been told that David had no money; that she was surprised to learn that he had an estate; and that she knew nothing of the probate proceeding until after distribution had been granted.

Some oral testimony was also taken on the hearing of the motion to vacate. Morris testified that he knew Rose and David had been married, but believed that they were divorced; that when David died he knew that Rose was alive and in San Francisco, but did not know her address or that she had been in the hospital, or anything about her health and condition; that when he first consulted his attorney about petitioning for letters of administration his attorney asked about relatives of the deceased, and that he told the attorney that David had been married but that he had been divorced many years before; that his brother had told him that he had a final decree of divorce; that he made no investigation of the finality of the divorce because he believed that it was final. The attorney for Morris testified that Morris may have told him about David's wife and the divorce, but stated that he had no definite recollection; that his normal office practice was to ask that question, and he imagined that it had been asked and

answered as testified to by Morris. He also testified that he may have told an attorney for Rose, after the entry of the decree of distribution, that he had never before heard that David had been married. This attorney for Rose testified that such a conversation had occurred.

On this showing the motion to vacate was denied. Rose thereupon appealed from the order of denial (1 Civ. 14259). Thereafter, Rose was declared incompetent, and her son appointed guardian of her person and estate. The certiorari proceeding (1 Civ. 14269) was instituted in the guardian's name.

■ It is clear that the appeal must be dismissed. In probate matters an appeal does not lie from the denial of a motion to vacate made under section 473 of the Code of Civil Procedure. "Section 1240 of the Probate Code specifies the orders and judgment in probate from which an appeal will lie, and an order denying relief under section 473 of the Code of Civil Procedure is not one of the orders so specified.

". . . this court has on numerous occasions held that no appeal will lie from an order in probate denying relief under section 473 of the Code of Civil Procedure." (*Estate of O'Dea,* 15 Cal.2d 637, 638, 639 [104 P.2d 368].) (See, also, *Estate of Brady,* 32 Cal.2d 478, 479 [196 P.2d 881]; *Estate of Herrington,* 79 Cal.App.2d 389, 390 [179 P.2d 650]; *Estate of Ryker,* 92 Cal.App.2d 162 [206 P.2d 406]; *Estate of Hart,* 92 Cal.App.2d 691 [208 P.2d 59].) Thus, the order appealed from is nonappealable, and the purported appeal must be dismissed.

■ It is also our opinion that review by certiorari should be denied. In the first place, there is a question of whether the petition for certiorari was filed too late. The time to appeal from the denial of the motion to vacate expired April 8, 1949. The appeal was filed on April 2, 1949. The petition for certiorari was not filed until July 26, 1949. While there is no statutory time within which a petition for such a writ must be filed, the remedy may be barred by laches. Where there is an unexplained delay in seeking the writ, the courts have considered the time in which to appeal as being a reasonable time, and, in the absence of an explanation, the expiration of such time may be sufficient to bar relief. (*Bryant* v. *Superior Court,* 16 Cal.App.2d 556, 561 [61 P.2d 483].) Rose and her counsel should have known that an appeal would not lie from the denial of a motion to vacate in probate mat-

ters. The O'Dea case had been decided in 1940, and clearly established the law. There seems to be no reasonable explanation as to why the petition for certiorari was so long delayed. This alone might well be held to bar relief by means of certiorari.

But there are other reasons why certiorari is not here available. Section 1068 of the Code of Civil Procedure provides that the writ may issue where an inferior court has exceeded its jurisdiction "and there is no appeal, nor, in the judgment of the court, any plain, speedy, and adequate remedy." The proper rule that has been frequently quoted was stated as follows in the leading case of *Redlands etc. Sch. Dist.* v. *Superior Court,* 20 Cal.2d 348, 350 [125 P.2d 490] : "The writ of certiorari is available in this state only if the following conditions are present: (1) an excess of jurisdiction on the part of an inferior tribunal; (2) no right of appeal; and (3) no other plain, speedy and adequate remedy."

█ Tested by these standards, the action of the trial court in refusing to vacate the final decree of distribution cannot be annulled. Certainly, the trial court had jurisdiction of the controversy. The court having jurisdiction, even if it was in error in its determination, such error cannot be reviewed on certiorari. (*Spanach* v. *Superior Court,* 4 Cal.2d 447, 450 [50 P.2d 444] ; *Estate of Kay,* 30 Cal.2d 215, 226 [181 P.2d 1].) █ Moreover, the trial court had power on the motion to vacate to pass on all controverted questions of fact. In support of its order of denial it must be conclusively presumed that the trial court resolved all conflicts against Rose, and therefore impliedly found that Rose knew of the death of David on the date of such death, but did nothing to protect her rights until the motion to vacate was filed some 13 months later. There is evidence to support such an implied finding. According to Rose's own affidavit, one reason she was not diligent in protecting her rights was that she erroneously believed that David had no property, although she had averred in her divorce complaint that the business David was then operating, and which he was still operating at the time of his death, was worth a substantial sum of money. █ Section 473 of the Code of Civil Procedure does not automatically require the vacation of every erroneous judgment. It is only when the erroneous judgment has been entered through "mistake, inadvertence, surprise or excusable neglect" of the party that relief may be granted. The question now is not whether the trial court could have set aside the final decree

of distribution, but whether, as a matter of law, it was compelled to do so. If there is any evidence to support the implied finding of the trial court that the decree of distribution was not entered as the result of mistake, inadvertence or excusable neglect, as those terms are used in section 473, this court has no power to interfere. While Rose averred that she was ill and confined to her home during the 13-month period, she also averred that she visited her doctor during this period, and could, obviously, likewise have visited a lawyer. The trial court was not bound to conclude that she could not, had she been diligent, secured legal advice. To be entitled to relief under section 473, the person seeking relief must make the motion ''within a reasonable time, in no case exceeding six months.'' The six-month period is the maximum, but the mere fact that the motion has been made within that period does not automatically entitle the movent to relief. Such party must also show that the motion was made within a ''reasonable time,'' which is simply another way of stating that the movent cannot secure relief by certiorari if he has been guilty of laches. The trial court was justified in finding that Rose was guilty of laches. That alone is sufficient to justify a denial of the requested relief. (See cases collected 14 Cal.Jur., p. 1062, § 109.) It is for the trial court to say what is a reasonable time. (See cases collected 14 Cal.Jur., p. 1065, § 110.)

It must be remembered that the decree of distribution became final 60 days after it was entered. One who claims to be entitled to succeed to a portion of the estate of a decedent cannot sit back after she has knowledge of the death, allow the estate to be probated, allow a decree of distribution to be entered, allow the time to appeal to elapse, and then, just under the six-month period, claim relief under section 473 and successfully urge that she is entitled to such relief as a matter of law. The relief permitted by section 473 is an extraordinary and conditional remedy, allowed to those who, through no fault of their own, have been deprived of their day in court. Where, as here, the trial court impliedly found that Rose knew of the death but simply slept on her rights in the mistaken belief that David had no estate, a belief not engendered by Morris or David, the action of the trial court in denying relief cannot be upset. The motion for relief under section 473 is addressed to the sound discretion of the trial

court. (*Estate of Ryker*, 95 Cal.App.2d 507 [213 P.2d 420], and particularly opinion on denial of petition for rehearing found in the minutes of the court for February 9, 1950.) Where, as here, the record supports the action of the trial court, that discretion cannot be interfered with.

The theory of Rose seems to be that she was prevented from learning of the pendency of the probate by the deliberate acts of Morris, who, it is charged, concealed from her the fact that the proceedings were pending. If such fraud appeared, Rose might well be entitled to the requested relief. But here there was positive evidence that Morris had acted in utmost good faith. He testified that he had been told by David that the divorce was final, and honestly believed that this was so. There is no evidence to the contrary. Even if there were, this conflict has also been resolved against Rose by the trial court.

Under such circumstances, the action of the trial court in refusing to vacate the final decree of distribution cannot be disturbed on certiorari. If Rose has any remedy it is by an independent action in equity against Morris to impress a trust upon the distributed property. (*Hewett* v. *Linstead*, 49 Cal.App.2d 607 [122 P.2d 352] ; *Larrabee* v. *Tracy*, 21 Cal. 2d 645 [134 P.2d 265].) Such an action is in fact pending. We express no opinion at all on the question as to whether any of the determinations made in this proceeding are or are not res judicata in the equity case. That problem is not now before us.

The appeal in 1 Civil 14259 and the proceeding in certiorari numbered 1 Civil 14269 are dismissed.

Bray, J., and Schottky, J. pro tem., concurred.