[No. G010218. Fourth Dist., Div. Three. May 28, 1991.]

MAURO B., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
WILLIAM S. et al., Real Parties in Interest.

## COUNSEL

Beckman & Baskette and Ronald B. Beckman for Petitioner.

No appearance for Respondent.

Jane A. Gorman for Real Parties in Interest.

## OPINION

**MOORE, J.**—The superior court issued a judgment under the Uniform Parentage Act (Civ. Code, § 7000 et seq.) denying petitioner Mauro B.'s request to declare a parent and child relationship exists between himself and Baby Boy G. (minor), and allowing real parties in interest William and Mary S. to adopt minor without Mauro's consent. Mauro filed the instant petition seeking to vacate the judgment. Initially, we issued an alternative writ and set the matter for a hearing. Real parties filed a demurrer and return to the writ, arguing in part the petition had not been timely filed. We conclude that since the lower court's decision was an appealable judgment and petitioner failed to file a notice of appeal within the time provided by law, the petition should be dismissed.

## FACTS

The relevant facts are not in dispute.[1] Tammie G. gave birth to minor April 5, 1990. On April 16, William and Mary S. filed a petition to adopt him in the Orange County Superior Court. Unaware of the S.'s petition, Mauro filed an action in the San Joaquin County Superior Court seeking to declare the existence of a father and child relationship between himself and minor. (Civ. Code, § 7006.) On May 5, Tammie formally consented to minor's adoption by Mr. and Mrs. S. However, Mauro refused to consent. Real parties then filed a petition to determine Mauro's parental rights and the necessity of his consent for the proposed adoption. (Civ. Code, § 7017.) The matter originally filed in San Joaquin County was consolidated with the Orange County proceedings.

On August 9, at the conclusion of a four-day trial, respondent court orally pronounced judgment denying Mauro's request to establish he had a parent and child relationship with minor, and granting the S.'s petition allowing them to adopt him without Mauro's consent. A written judgment was signed and entered by the lower court August 20, and real parties served notice of its entry on petitioner August 29.

Mauro did not appeal from the judgment. On October 29, 82 days after respondent court announced its decision, Mauro filed his present petition with this court.

## DISCUSSION

Real parties contend the petition is untimely because Mauro failed to appeal the judgment pursuant to Civil Code section 7017, subdivision (g) and California Rules of Court, rule 39(b). Mauro argues the timeliness of his petition must be determined under California Rules of Court, rule 2(a). At oral argument, Mauro alternatively argued his right to seek relief by extraordinary writ is supported by California Rules of Court, rule 39.2(b) and *In re Baby Boy M.* (1990) 221 Cal.App.3d 475 [272 Cal.Rptr. 27].

■ It is well settled that a party is not entitled to obtain review of an appealable judgment or order by means of a petition for an extraordinary writ where he or she failed to timely file an appeal from the ruling. (*Adoption of Alexander S.* (1988) 44 Cal.3d 857, 865 [245 Cal.Rptr. 1, 750 P.2d 778] [habeas corpus]; *Simmons v. Superior Court* (1959) 52 Cal.2d 373, 375 [341 P.2d 13] [cert.]; *Phelan v. Superior Court* (1950) 35 Cal.2d 363,

---

[1]Since we conclude Mauro is not entitled to relief by extraordinary writ, the facts relating to the petition's underlying merits are not set forth.

370-371 [217 P.2d 951] [mandamus]; *Leach* v. *Superior Court* (1932) 215 Cal. 531, 535 [12 P.2d 1] [prohibition]; see also *In re Marriage of Patscheck* (1986) 180 Cal.App.3d 800, 802-804 [225 Cal.Rptr. 787]; *Taper* v. *City of Long Beach* (1982) 129 Cal.App.3d 590, 606-607 [181 Cal.Rptr. 169].) In *Leach* v. *Superior Court, supra*, 215 Cal. 531, the Supreme Court held a writ would not lie where the petitioner "had a right to appeal from the order or judgment in question, and has permitted his time to elapse without perfecting an appeal therefrom." (*Id.* at p. 535.) "An attempted appeal from a *nonappealable* interim order has sometimes been treated as a writ petition. [Citation.] However, there is no authority for treating an untimely appeal as a writ petition. [Citation.] *To do so would be improper because a writ petition should be entertained only where there is no adequate remedy by appeal and the remedy by appeal is not made inadequate by a party's having neglected to submit his notice of appeal for filing within the time allowed.* [Citation.]" (*In re Marriage of Patscheck, supra*, 180 Cal.App.3d at p. 804, italics added.)

██ This rule is particularly important in adoption-related cases where courts recognize a "special need for finality." (*In re A. M.* (1989) 216 Cal.App.3d 319, 322 [264 Cal.Rptr. 666].) In *Adoption of Alexander S., supra*, 44 Cal.3d 857, the Supreme Court found the public policy against protracted litigation in child custody matters supported its decision to bar using habeas corpus to collaterally attack a final nonmodifiable judgment in an adoption-related proceeding. ". . . 'It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged.'" (*Id.* at p. 868, quoting *Lehman* v. *Lycoming County Children's Services* (1982) 458 U.S. 502, 513-514 [73 L.Ed.2d 928, 938, 102 S.Ct. 3231].)

██ Where an appeal lies, the timely filing of a notice of appeal is a jurisdictional requirement. (*Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660, 674 [125 Cal.Rptr. 757, 542 P.2d 1349]; *Estate of Hanley* (1943) 23 Cal.2d 120, 123 [142 P.2d 423, 149 A.L.R. 1250].) ██ However, the Supreme Court has held the use of an extraordinary writ to review an appealable judgment or order after the time for appeal has passed is barred except "in the absence of special circumstances constituting an excuse for failure to employ that remedy . . . ." (*Adoption of Alexander S., supra*, 44 Cal.3d at p. 865; see also *Phelan* v. *Superior Court, supra*, 35 Cal.2d at pp. 370-371.)

Although the Supreme Court has not defined what constitutes special circumstances in this context, relief has been allowed in only very narrow

situations. A few cases have permitted a party to employ a writ after the time for an appeal expired where the lower court acted in excess of its jurisdiction or fundamental constitutional rights were violated. (*In re James* (1952) 38 Cal.2d 302, 309 [240 P.2d 596] [fundamental rights; denial of right to counsel]; *Grinbaum* v. *Superior Court* (1923) 192 Cal. 528, 556-557 [221 P. 635] [excess of jurisdiction; order appointing a guardian in an insanity proceeding where the alleged incompetent was not given notice of the proceeding or the application for appointment of the guardian, and did not appear]; *Elder* v. *Justice's Court* (1902) 136 Cal. 364, 367 [68 P. 1022] [excess of jurisdiction; petitioner given no notice of the trial date or that a default judgment had been entered against him]; see also *In re McInturff* (1951) 37 Cal.2d 876, 880 [236 P.2d 574].) In *Phelan* v. *Superior Court, supra*, 35 Cal.2d 363, the court also permitted the writ to be heard on its merits where uncertainty had previously existed respecting the appealability of the order in question, and several earlier decisions, overruled in *Phelan*, had held an appeal was not an adequate remedy in that type of case. (*Id.* at pp. 371-372.)

Here, none of the foregoing circumstances applies. Petitioner appeared at trial with counsel and was present when respondent court announced its ruling from the bench. The petition contains no factual allegations explaining why an appeal was not taken or justifying the delay in filing it. At oral argument, petitioner's counsel argued he was waiting for preparation of the reporter's transcript of the lower court's proceedings before filing the petition. This is no excuse. Even assuming Mauro was entitled to relief by an extraordinary writ, California Rules of Court, rule 56(c)(4) provides a transcript is not necessary where counsel files a declaration stating the transcript has been ordered and the date it is expected to be filed. Neither can petitioner argue the delay in hearing an appeal makes that remedy inadequate where he waited so long before filing his writ petition.

The dissent cites several cases for the proposition an appellate court has discretion to consider an extraordinary writ at any time, and uses the underlying facts of this case to find the special circumstances supporting use of a writ. With the sole exception of *Reynolds* v. *Superior Court* (1883) 64 Cal. 372 [28 P. 121], none of the cited cases involved an appealable order or judgment. And *Reynolds* is in accord with our opinion: "[U]nless circumstances of an extraordinary character be shown to have intervened, the remedy through a writ of *certiorari* should be held to be barred by the lapse of the same length of time that bars an appeal from a final judgment." (*Id.* at p. 373.)

The underlying facts cannot provide a basis for allowing use of an extraordinary writ to review an appealable judgment or order after the time

for an appeal has expired. The required special circumstances must relate to the delay and justify the petitioner's failure to employ the appeal remedy. (*Adoption of Alexander S., supra,* 44 Cal.3d at p. 865.) Under the dissent's approach, a writ would be allowed whenever the appellate court disagrees with the result reached by the lower court. Such an approach would wreak havoc on the finality of all cases and would relegate judgments in adoption-related cases to interim custody orders.

Our dissenting colleague also claims the failure of Mauro's attorney to file an appeal is sufficient excuse to allow appellate review. Such an argument is nothing more than a disguised attempt to apply the doctrine of constructive filing to an adoption-related case. (See *In re Benoit* (1973) 10 Cal.3d 72 [109 Cal.Rptr. 785, 514 P.2d 97].) This contention was rejected in *In re A. M., supra,* 216 Cal.App.3d 319, which held the special need for finality in adoption-related proceedings to be of paramount importance over the parental rights of a natural mother or father. (*Id.* at p. 322.)

Mauro also contends his petition was filed on the last day for taking an appeal under California Rules of Court, rule 2(a), and therefore we can construe it as a timely appeal. ■ Real parties contend the timeliness of the appeal must be determined under California Rules of Court, rule 39(b). We conclude real parties' argument is meritorious.

Rule 2(a) of the California Rules of Court states the time for filing an appeal in civil actions is generally the earliest of either 60 days after the clerk mails notice of entry of the judgment, 60 days after an opposing party serves notice of entry of judgment, or 180 days after judgment is entered. Real parties served notice of entry of judgment on petitioner August 29, 1990. The 60th day thereafter fell on Sunday, October 28. Therefore, the last date to file an appeal under rule 2(a) was Monday, October 29. (Code Civ. Proc., § 12a; *Grande* v. *Donovan* (1942) 55 Cal.App.2d 694, 695 [131 P.2d 855].)

However, this case involved a consolidated proceeding involving actions to determine the existence of a parent and child relationship and the right of real parties to proceed with their adoption of the minor without Mauro's consent. Civil Code section 7006, subdivision (c) provides that an action to determine the existence of a father and child relationship where the child has no presumed father "shall be consolidated with a proceeding pursuant to subdivision (b) of Section 7017 if a proceeding has been filed under Section 7017." Under Civil Code section 7017, subdivision (g) "Any order requiring or dispensing with a father's consent for the adoption of a child may be appealed from in the same manner as an order of the juvenile court declaring a person to be a ward of the juvenile court." California Rules of Court, rule 39(b) states, in part, "an appeal from the juvenile court is taken by filing

with the clerk of that court a written notice of appeal within 60 days after the rendition of the judgment or the making of the order. . . ." Under this rule, if an appealable judgment or order is pronounced in open court, the time for taking an appeal from it begins to run when the judgment or order is pronounced. (*In re Markaus V.* (1989) 211 Cal.App.3d 1331, 1337 [260 Cal.Rptr. 126].)

The lower court announced its decision in open court at the completion of trial. Accordingly, under California Rules of Court, rule 39(b) the last day to file an appeal from the judgment fell on Monday, October 8. Mauro did not file the instant petition until three weeks later.

Alternatively, Mauro contends Civil Code section 7017, subdivision (g)'s use of the word "may" rather than "shall" means application of the juvenile court rules to determine the timeliness of an appeal is discretionary. However, the term "may" appears just before the phrase "be appealed." Thus, we construe it as giving parties to a section 7017 proceeding the right to appeal the trial court's decision.

At oral argument, Mauro contended he relied on California Rules of Court, rule 39.2(b) and our opinion in *In re Baby Boy M., supra*, 221 Cal.App.3d 475 in not filing an appeal. These authorities do not support his cause.

California Rules of Court, rule 39.2(b) provides: "Extraordinary writs are encouraged to review orders in child custody proceedings. If a writ is sought after such an order, an appeal will be deemed to be an inadequate remedy." But that rule is expressly limited to judgments of the Orange County Superior Court "freeing minors from parental custody and control under Welfare and Institutions Code section 366.26 or Civil Code section 232 if the minor is a dependent child of the juvenile court." (Cal. Rules of Court, rule 39.2(a).) Thus, it does not apply here. While we recognize the present case also involves a determination of parental rights, the Judicial Council did not include this type of proceeding in rule 39.2 and we decline to construe the rule to apply to proceedings not expressly designated.

Second, although real parties attacked the petition on the ground it was untimely, Mauro failed to mention California Rules of Court, rule 39.2 in either his original petition or the reply. Therefore, we find Mauro's claim he relied on rule 39.2 to be unpersuasive.

Third, California Rules of Court, rule 39.2's policy of preferring review of child custody orders by writ rather than appeal would only be served if a writ petition were filed promptly after the trial court issued its ruling, and not by

waiting until after the appeal period has expired. As previously discussed, petitioner's reliance on the alleged delay in obtaining the reporter's transcript is no excuse. (See Cal. Rules of Court, rule 56(c)(4).)

Fourth, reliance on California Rules of Court, rule 39.2 in this context is unnecessary. As noted, an appeal in this type of proceeding is governed by the rules for juvenile court appeals. California Rules of Court, rule 39(e) grants such appeals "precedence over all other cases . . . ." Thus, the rules already provide for expediting an appeal in this context.

Finally, concerning *In re Baby Boy M., supra*, 221 Cal.App.3d 475, 487, we assume Mauro is referring to footnote 5 of that opinion, which discusses the difference between writs and appeals as to an appellate court's ability to make a judgment final "forthwith." (*Id.* at p. 487, fn. 5.) The footnote expresses no preference for writs, nor does it encourage parties to eschew appeals and file writ petitions instead. In the context of this proceeding, any reliance on *Baby Boy M.* is badly misplaced.

## DISPOSITION

Relief by extraordinary writ is inappropriate in this case. The alternative writ is dissolved, and the petition for writ of mandate or prohibition is dismissed.

Sills, P. J., concurred.

**SONENSHINE, J.**—I dissent.

I agree with the majority that this writ petition was filed after the trial court order terminating petitioner's parental rights became final. However, as recognized by my colleagues, writ review in special circumstances is nevertheless available. (Maj. opn., *ante*, at p. 953, quoting from *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 865 [245 Cal.Rptr. 1, 750 P.2d 778].) Such are our circumstances.

I

Because the majority opinion omits many material facts necessary to determine whether "special circumstances" exist, we recite the facts in detail. Petitioner and the child's natural mother, Tammie G., were never married, although they did cohabit. They lived together off and on, but separated several weeks before their baby was born. Tammie G. does not dispute that petitioner is her son's natural father.

The relationship was tumultuous. When Tammie G. gave birth on April 5, 1990, she was living with her sister; petitioner was living with his mother. Petitioner did not learn of his son's birth until April 12, when he also discovered Tammie G. had placed the baby for adoption. She refused to tell him his son's whereabouts. The next day he learned the baby was in Orange County but could not find out any details. He called and wrote a letter to the Orange County court clerk, noting his opposition to any adoption. On April 16, 1990, petitioner retained counsel. Unbeknownst to him, a petition for independent adoption was being filed by William and Mary S. on the same day in Orange County Superior Court. Two days later, petitioner filed a complaint in San Joaquin County Superior Court seeking to declare the existence of his parental relationship. Discovery in that proceeding led petitioner's counsel to Mrs. S., who by then had temporary custody of the baby, anticipating adoption.

Tammie G. formally consented to the adoption on May 5, and a petition for appointment of a guardian was filed in Orange County five days later. On May 14, 1990, Mr. and Mrs. S. filed a petition to determine petitioner's parental rights and the necessity of his consent for the proposed adoption, pursuant to Civil Code section 7017. Petitioner later filed a formal objection to the guardianship petition. The matter petitioner had originally filed in San Joaquin County was consolidated with both matters in Orange County and a four-day contested trial was held in August. The court denied petitioner's request to declare a parental relationship, and granted Mr. and Mrs. S.'s request permitting the adoption to go forward without petitioner's consent. The baby has resided with Mr. and Mrs. S. in Orange County since shortly after his birth. Petitioner has never seen his child.

The instant writ petition was filed on October 29, 81 days after the court rendered its oral statement of decision. At oral argument we learned petitioner's attorney had waited for the reporter's transcript before filing the writ petition. The attorney also believed a direct appeal would be an inadequate remedy because of the need to quickly decide the questions presented. Indeed, the points and authorities in support of the petition state: "Petitioner requires the fastest remedy possible in order to minimize any separation trauma that his son may suffer should this writ be granted." It is true that in most instances an extraordinary writ petition is resolved more quickly than a direct appeal. Counsel negligently, however, failed to file a protective notice of appeal within 60 days of the court's oral pronouncement of judgment.

II

Petitioner's failure to file his petition before the judgment became final is not a jurisdictional defect. "An appellate court *may* consider a petition for

extraordinary writ at any time (*Bryant* v. *Superior Court* (1936) 16 Cal.App.2d 556, 561 [61 P.2d 483]), but has discretion to deny a petition filed after the 60-day period applicable to appeals, and *should* do so absent 'extraordinary circumstances' justifying the delay. (*Reynolds* v. *Superior Court* (1883) 64 Cal. 372, 373 [28 P. 121]; *People* v. *Municipal Court (Mercer)* (1979) 99 Cal.App.3d 749 [160 Cal.Rptr. 455]; *People* v. *Superior Court (Duran)* (1978) 84 Cal.App.3d 480, 489 [148 Cal.Rptr. 698]; *Scott* v. *Municipal Court* (1974) 40 Cal.App.3d 995, 996 [115 Cal.Rptr. 620]; *Estate of Glassgold* (1950) 97 Cal.App.2d 859, 863-864 [218 P.2d 1016].)" (*Popelka, Allard, McCowan & Jones* v. *Superior Court* (1980) 107 Cal.App.3d 496, 499 [165 Cal.Rptr. 748].) Extraordinary circumstances here warrant appellate review.[1]

At the outset, it should be noted that fundamental constitutional rights are involved. "When an unwed father demonstrates a full commitment to the responsibility of parenthood by 'coming forward to participate in the rearing of his child,' [citation], his interest in personal contact with his child acquires substantial protection under the Due Process Clause." (*Lehr* v. *Robertson* (1983) 463 U.S. 248, 261 [77 L.Ed.2d 614, 262, 103 S.Ct. 2985].)[2]

Moreover, the majority opinion ignores petitioner's efforts to thwart the proposed adoption. He tenaciously protested adoption long before judgment was entered. He retained counsel immediately when the mother refused to tell him his son's whereabouts. Everything he did was consistent with asserting his parental rights.

In fact, it is the oversight of petitioner's attorney which leads to the majority opinion's conclusion precluding appellate review. Petitioner has no remedy for counsel's neglect. If this court is ever to afford extraordinary relief, this is exactly the case which demands it. Sufficient excuse was shown to allow appellate review of petitioner's claims, asserted here a mere three weeks after the judgment would otherwise have been final.

The majority opinion's reliance on *Adoption of Alexander S.*, *supra*, 44 Cal.3d 857, is misplaced. There, the Supreme Court reversed an appellate court decision which treated an untimely appeal as a petition for writ of habeas corpus. Ignoring the lateness of the appeal, the appellate court went on to review the merits of a natural mother's plea to reassert her parental

---

[1]The majority argues that I refer "to the underlying facts of this case to find the special circumstances supporting use of a writ." (Maj. opn., *ante*, at p. 945.) Of course. How else are special circumstances to be determined?

[2]Indeed, the majority opinion concedes review by writ petition is appropriate when fundamental constitutional rights are involved, even in the absence of a timely appeal. (Maj. opn., *ante*, at p. 954, citing *In re James* (1952) 38 Cal.2d 302, 309 [240 P.2d 596].)

rights in an adoption-related action. The natural mother had not appealed the trial court's denial of her petition to withdraw consent to her child's adoption. Rather, she sought to collaterally attack that order by appealing a judgment entered after the trial court concluded the father's consent was not required.

The Supreme Court, chastising the intermediate appellate court for treating the appeal as a petition for a writ of habeas corpus, emphasized the need to avoid "additional delay, uncertainty and potential harm to the prospective adoptee." (44 Cal.3d at p. 866.) Unlike Alexander S.'s mother, the petitioner here is not the cause of the delay. He has consistently asserted his parental rights and never wavered in his demand to be a father to his child. Alexander S.'s mother, by contrast, had originally given her consent to the adoption. After her request to withdraw that consent was denied, she did not appeal. Only later did she seek appellate review, and even then she did not petition for an extraordinary writ. The petitioner here did everything he could to avoid losing his parental rights. Yet the majority opinion concludes his attorney's failure to file a protective appeal allows this court to ignore, without review, petitioner's assertion those rights were unlawfully terminated. But ours is not a collateral attack on an issue previously adversely decided. It is, however, this petitioner's only chance to attack. In this case, the public policy favoring finality does not outweigh petitioner's right to appellate review of the termination of his fundamental constitutional right to be a father.

## III

As for the merits of the petition, my review establishes the judgment should be reversed.[3] The trial court found petitioner is a natural father. Civil Code section 7017, subdivision (d)(2), provides: "(2) If the natural father or a man representing himself to be the natural father claims parental rights, the court shall determine if he is the father. The court shall then determine if it is in the best interest of the child that the father retain his parental rights, or that an adoption of the child be allowed to proceed. The court, in making that determination, may consider all relevant evidence, including the efforts made by the father to obtain custody, the age and prior placement of the child and the effects of a change of placement on the child. If the court finds that it is in the best interest of the child that the father should be allowed to retain his parental rights, it shall order that his consent is necessary for an adoption."

---

[3]The majority argues my "approach" would allow writ review whenever an appellate court disagrees with a trial court. (Maj. opn., *ante*, at p. 955.) However I consider the ultimate result only after I conclude the request for writ relief was timely.

Here, the trial judge, in a lengthy oral pronouncement of judgment, articulated his reasons for terminating petitioner's parental rights. He found the best interests of the child required termination and concluded it would be detrimental to remove the child from the adoptive family. He announced it was in the child's best interest to have two parents rather than one. He also found "another area of detriment" if petitioner's parental rights were not terminated because Tammie G. planned to reclaim the child and contest petitioner's request for custody. That, according to the trial judge's views, would require visitation rights for the noncustodial parent: "And the track record of five years of getting along does not bode well for having a smooth visitation schedule." The judge also noted "that it's in the best interests of the minor child that the minor child go to a family that is intact and appears to be able to deal with its problems in a much quieter and more sophisticated manner."

The judge acknowledged the allegations of petitioner's alcohol and drug abuse, but rejected the theory that made him an unfit father. Rather he questioned petitioner's response to those problems and concluded he demonstrated no interest in dealing with them. Finally, the judge stated, "We do have a situation where it's in the best interests of the minor child that I not disturb where the minor child is presently living, and the court has found as a matter of law there's no biological preference to the natural father . . . ."

A review of the evidence does not substantiate the court's conclusion the best interests of the child require terminating petitioner's parental rights. The trial judge opined, without evidentiary support, this child's best interests called for terminating his natural father's rights in light of the child's attachment to the adoptive family and the fact a long-term two-parent home is preferable to a single parent. He ignored petitioner's evidence of the extensive preparations he had made to gain custody of his son.

The court was concerned about petitioner's stormy relationship with Tammie G. But that is irrelevant. They do not plan to marry or even continue their relationship, let alone attempt to raise the child together.

The "best interest" factors enumerated in Civil Code section 7017, subdivision (d)(2), are contradictory as applied in this context. Specifically, if the "efforts made by the father to obtain custody" are thwarted by the natural mother, as is the case here, it is unfair to consider those factors twice. In other words, when petitioner and Tammie G. separated before the baby was born, and the child was placed for adoption before petitioner even knew of the birth, the natural mother had exclusive control over several factors ostensibly relating to the "best interest" question.

In interpreting the subject statute, we are bound by general rules of statutory construction. These require the statute be "given a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which application will result in wise policy rather than mischief or absurdity. [Citations.]" (*DeYoung* v. *City of San Diego* (1983) 147 Cal.App.3d 11, 18 [194 Cal.Rptr. 722].)

Our interpretation gives meaning to subdivision (d)(2) of Civil Code section 7017 in this light: If a natural father makes minimal efforts to obtain custody, the child's age and prior placement are entitled to great weight. But where his efforts are thwarted, the trial judge should discount the significance of the child's placement. Any other interpretation would, in effect, give a statutory preference to a proposed adoptive family, even where the father, like petitioner, has done everything possible to prevent this placement.

The trial court's view of the applicable code section placed an overwhelming burden on petitioner because the prior placement was effectuated without his knowledge. One can hardly criticize his efforts to obtain custody here: He was forced to file a superior court action to even determine where the child resided. By then, his son had been spirited from the county and an adoption petition had already been filed. The consolidated actions did not come to trial until the child was six months old. Petitioner did everything he could do to obtain custody within the meaning of Civil Code section 7017, subdivision (d)(2).

Due process considerations would require we declare the statute unconstitutional under the interpretation adopted by the trial court. The judge found the child's prior placement with the adopted family was paramount to petitioner's paternal interests. As applied, the statute violated petitioner's rights to due process. We recognize his rights are limited by our determination he is a natural rather than a presumed father. However, he retains certain constitutional rights as the biological father who has made an effort to gain custody.

*Jermstad* v. *McNelis* (1989) 210 Cal.App.3d 528 [258 Cal.Rptr. 519] explains it well: "We are constrained to read [Civil Code] section 7017, subdivision (d)(2) in a manner which avoids a potential for conflict with the federal Constitution. [Citation.] If read to bar a parental preference to a natural father who has appropriately grasped his custodial opportunity interest the statute would present such a conflict. The statute . . . lends itself to conformity with the constitutional concerns. In a case where the natural father has diligently sought to shoulder the burdens of the paternal relation-

ship, including the burden of custody, the requirement of parental preference arises from the federal Constitution. Accordingly, the statutory criteria of [Civil Code] section 7017 for the best interest of the child regarding retention of parental rights under the statute must be read in the light of this requirement. The statute admits of such an accommodation." (*Id.*, at pp. 550-551.)

The trial judge ignored petitioner's remaining constitutional rights, as explained in *Jermstad*, and did not correctly apply the factors enumerated in Civil Code section 7017, subdivision (d)(2). In sum, the conclusion the best interest of the child required termination of petitioner's parental rights is not supported by substantial evidence. The court therefore abused its discretion in terminating those rights.

Special circumstances justify petitioner's delay in seeking appellate review. A full review of this case leads to the compelling conclusion the judgment should be reversed.

Petitioner's application for review by the Supreme Court was denied August 15, 1991.