[No. E009488. Fourth Dist., Div. Two. Oct. 16, 1992.]

In re RICKY H. et al., Persons Coming Under the Juvenile Court Law.
RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Plaintiff and Respondent, v.
LISA H., Defendant and Appellant.

## Counsel

Kathleen Bryan, under appointment by the Court of Appeal, for Defendant and Appellant.

William C. Katzenstein, County Counsel, and Carole A. Nunes, Deputy County Counsel, for Plaintiff and Respondent.

David F. Blaisdell, under appointment by the Court of Appeal, for Minors.

## OPINION

**McKINSTER, J.**—A mother purports to appeal from findings and orders made at hearings conducted pursuant to Welfare and Institutions Code sections 366.21 and 366.26.[1] Finding that none of the challenged findings and orders are properly before us in this proceeding, we dismiss the appeal.

### PROCEDURAL BACKGROUND

On July 18, 1989, the Riverside County Department of Public Social Services filed a petition alleging that Shaqueya H. (born July 29, 1984) and Ricky H. (born Sept. 9, 1986) came within section 300, subdivisions (b), (d), and (g). (This petition amended and superseded a prior petition filed May 3, 1989.) At a joint jurisdiction and disposition hearing conducted on October 10, 1989, the juvenile court found the allegations to be true, and adjudged the minors to be dependent children of the court. The minors were placed in foster care, and the mother was ordered to complete a reunification plan, including visitation.

A six-month review hearing pursuant to section 366.21, subdivision (e), was conducted on May 17, 1990, at which the dependency finding and the placement in foster care were continued. A 12-month review hearing pursuant to section 366.21, subdivision (f), originally set for November 15, 1990, was ultimately conducted on March 12, 1991.[2] At that time, the court found "that the department has provided reasonable [reunification] services and that return of the children would be detrimental to their physical or emotional well-being." It also found that reunification within the next six months

---

[1] Unless specified otherwise, all further section references are to this code.

[2] The mother expresses some uncertainty over whether this hearing was a 12-month hearing pursuant to section 336.21, subdivision (f), or an 18-month hearing pursuant to section 366.22. While it occurred over 18 months after the initial detention, it was not a section 366.22 hearing. Section 366.22 applies only when the case has been continued pursuant to section 366.21, subdivision (g)(1) (§ 366.22, subd. (a)), which in turn can occur only after the court finds, at a section 366.21, subdivision (f) hearing, either "that there is a substantial probability that the minor will be returned to the physical custody of his or her parent or guardian within six months or that reasonable services have not been provided to the parent or parents." (§ 366.21, subd. (g)(1).) Here, there were no such findings, no such continuance, and thus no section 366.22 hearing.

was not likely. Accordingly, it terminated reunification services, and set the matter for a permanency planning hearing pursuant to section 366.26.[3]

The mother filed a notice of appeal on May 9, 1991, in which she purported to appeal "from the judgment . . . entered March 11, 1991 . . . ." The only action taken in this action on that date was to continue the review hearing to the following day. However, liberally construing the notice (Cal. Rules of Court, rule 1(a)), we understand the mother to be appealing from the orders entered on March 12, 1991.

At the permanency planning hearing, conducted on July 12, 1991, the court adopted a plan of adoption for Ricky, and terminated his parents' rights. The permanent plan adopted for Shaqueya was for long-term foster care.

The mother initially decided not to appeal the orders of July 12, 1991. After the mother told the counsel appointed to represent her in her first appeal that she wanted her children to be returned to her, that counsel filed a second notice of appeal on September 19, 1991, addressed to the orders of July 12, 1991. However, on September 27, 1991, this court on its own motion dismissed the second appeal as untimely, it having been filed more than 60 days after July 12, 1991. (Cal. Rules of Court, rule 39(b).)

Following the dismissal of the second appeal, the mother moved in this case to have the first notice of appeal deemed to be a premature appeal from the orders of July 12, 1991, and thus directed toward both hearings. We deferred a ruling on that motion until now.

CONTENTIONS

The mother raises numerous alleged errors in the orders emanating from both the March 12, 1991, section 366.21, subdivision (f) (hereinafter, 366.21(f)) hearing and the July 12, 1991, section 366.26 (366.26) hearing. As will be seen, however, we find that none of those issues is properly before us. Accordingly, we conclude that the appeal should be dismissed.

_____

[3]No order was made regarding visitation. The mother's visits to Shaqueya were ordered suspended on August 3, 1990. No such restriction had been placed on her visits to Ricky. Therefore, visitation with him was still permitted. (§ 366.21, subd. (h) ["The court shall continue to permit the parent to visit the minor pending the [section 366.26] hearing unless it finds that visitation would be detrimental to the minor."].)

### Discussion

A. *Because the Mother's Appeal From the Orders of July 12, 1991, Is Untimely, the Alleged Errors in Those Orders Are Not Before Us.*

The mother makes several arguments why the order of the 366.26 hearing on July 12, 1991, terminating her parental rights over Ricky and placing Shaqueya in long-term foster care, should be reversed. Specifically, she contends that the termination violates her right to due process for two separate reasons. In addition, she contends that the order terminating her rights to custody of Ricky is not supported by substantial evidence.

However, we need not decide any of those issues unless the second appeal is actually before us. As noted, we previously dismissed that appeal as untimely. The mother makes two arguments why the merits of that appeal, and specifically the issues described above, should be considered here despite that untimeliness. However, we reject both rationales, and now deny the motion to deem the first notice of appeal to be a premature appeal from the orders made at the 366.26 hearing of July 12, 1991.

#### 1. *Premature Filing*

Generally, "[t]he rules governing appeals from the superior court in criminal cases are applicable to all appeals from the juvenile court . . . ." (Cal. Rules of Court, rule 39(a).) Those rules, in turn, provide: "A notice of appeal filed prior to the time prescribed therefor is premature but may, in the discretion of the reviewing court for good cause, be treated as filed immediately after the rendition of the judgment or the making of the order." (Cal. Rules of Court, rule 31(a).) This is consistent with the rule governing premature appeals in general: "A notice of appeal filed prior to rendition of the judgment, but after the judge has announced his intended ruling, may, in the discretion of the reviewing court for good cause, be treated as filed immediately after entry of the judgment." (Cal. Rules of Court, rule 2(c).)

■ The mother contends that her first notice of appeal is a premature appeal from the orders entered at the 366.26 hearing, and asks us to exercise our discretion under these rules to deem that premature appeal to be timely. We decline to do so.

Typically, premature appeals are deemed to be timely when the decision being appealed from has been made preliminarily, but is not yet final. For instance, premature notices of appeal have been treated as timely when they were filed after the verdict but before the pronouncement of judgment

(*People* v. *Richards* (1969) 269 Cal.App.2d 768, 769, fn. 1 [75 Cal.Rptr. 597]), or after a judge announced an intended decision but before a final judgment was signed (*People* v. *Municipal Court* (*White*) (1979) 88 Cal.App.3d 206, 209, fn. 1 [151 Cal.Rptr. 861]). Here, by contrast, at the time that the initial notice of appeal was filed, there had been no preliminary decision that the mother's parental rights to Ricky would be terminated, or that Shaqueya would be placed in long-term foster care. While those were possible consequences of the future 366.26 hearing, those orders were not the only possible outcomes. (§ 366.26, subd. (b).)

Moreover, it does not appear that the mother intended her initial notice of appeal to encompass those possible orders. That notice purports to appeal "from the judgment of [the juvenile] court entered March 11, 1991 at the hearing pursuant to Welfare and Institutions Code Section 366.21 (h)." Subdivision (h) of section 366.21 provides: "In any case in which the court orders that a hearing pursuant to Section 366.26 shall be held, it shall also order the termination of reunification services to the parent. The court shall continue to permit the parent to visit the minor pending the hearing unless it finds that visitation would be detrimental to the minor." Thus, the notice of appeal refers specifically to the 366.21(f) hearing, and by inference to the order made there concerning the termination of reunification services. It does not suggest that it is intended to challenge decisions not yet made, i.e., whether the best interests of the children would be served by their adoption, the creation of a guardianship, or their placement in long-term foster care. (§ 366.26, subd. (b).)

To the contrary, in documents filed contemporaneously with the notice of appeal, the mother clearly described the orders to be reviewed. For instance, in the background information questionnaire supporting the motion for appointment of counsel which was included with her notice of appeal, she referred to a court trial at which "reunification services [were] terminated." No reference was made of termination of parental rights or of placement in long-term foster care. Similarly, in the docketing statement filed with this court, she stated that the appeal was taken from an order following a semiannual review, but did not mark the box three lines down the page, regarding a judgment denying termination of parental rights.

For both of these reasons, there is not good cause for considering her notice of appeal in this case to be an appeal from the orders made at the subsequent 366.26 hearing.

### 2. *Constructive Filing*

Alternatively, the mother asks that she be relieved from the effects of her late filing of the second notice of appeal through the doctrine of

constructive filing, citing *People* v. *Slobodion* (1947) 30 Cal.2d 362 [181 P.2d 868] and *In re Benoit* (1973) 10 Cal.3d 72 [109 Cal.Rptr. 785, 514 P.2d 97]. ■ Under that doctrine, as developed in *Slobodion* and its progeny, a late notice of appeal will be deemed to have been timely filed if (1) the appellant is incarcerated and (2) because of special circumstances, "the delay in filing the notice of appeal (a) has resulted from conduct or representations of prison officials upon which the prisoner relied and (b) has not been due substantially to fault on the part of the prisoner." (*In re Benoit, supra*, p. 86.) In *Benoit*, that doctrine was "extended to apply to situations . . . where the defendant is incarcerated or otherwise in custody after having been properly notified of his appeal rights by the sentencing judge and has made arrangements with his trial attorney to file a notice of appeal for him." (*Ibid.*) We reject her request, for three reasons.

■ First of all, an appellant cannot attack an order dismissing one appeal by seeking relief in a separate appeal. The mother's procedural options in the dismissed case may have included a motion to recall the remittitur or a petition for review. However, moving for relief in a separate appeal is not a proper vehicle for obtaining relief from the dismissal.

Second, as noted, both *Slobodion* and *Benoit* applied the doctrine of constructive filing to incarcerated appellants. By contrast, the mother has neither been charged with nor convicted of a criminal offense, nor has she been shown to have been in custody of any sort during the 60 days following the 366.26 hearing. Thus, she does not qualify for relief under those two cases. Moreover, this court has expressly declined to extend the doctrine of constructive filing to appeals of orders terminating parental rights. (*In re Issac J.* (1992) 4 Cal.App.4th 525, 530-534 [6 Cal.Rptr.2d 65]; accord, *Mauro B.* v. *Superior Court* (1991) 230 Cal.App.3d 949, 955 [281 Cal.Rptr. 507], and *In re A. M.* (1989) 216 Cal.App.3d 319 [264 Cal.Rptr. 666].)

Finally, even if we were to extend the doctrine beyond incarcerated criminal defendants, the mother would not qualify for relief on the record before us. The mother's motion reveals that her failure to file a timely appeal from the 366.26 orders was the result of her own deliberate decision not to pursue an appeal, not from a reasonable but disappointed reliance upon the promise of counsel to do so. The constructive filing doctrine is not intended to save an appellant from the natural consequences of his or her own decisions.

B. *The Findings and Orders Made at the 366.21(f) Hearing Are Not Appealable.*

At the 366.21(f) hearing on March 12, 1991, the juvenile court determined that the reunification services had been adequate, but ordered that the

services be terminated and that a 366.26 hearing be held. The mother contends that both the finding of adequacy of past services and the order terminating further services were erroneous.

However, we need consider those issues only if that finding and that order are appealable. The Legislature has expressly provided that "[a]n order by the court directing that a hearing pursuant to [§ 366.26] be held is not an appealable order, but may be the subject of review by extraordinary writ." (§ 366.26, subd. (k).) We conclude that review by direct appeal of the finding and order here is barred by the same provision.

Since section 366.26, subdivision (k), expressly forbids the direct appeal of an order directing that a 366.26 hearing be held, a finding or order made contemporaneously with the issuance of such a directive may be challenged by direct appeal only if the challenge is not designed to overturn that nonappealable directive. (*In re Elizabeth M.* (1991) 232 Cal.App.3d 553, 562 [283 Cal.Rptr. 483] [interpreting comparable language in § 366.25, subd. (j)].) To hold otherwise would violate the rule that "[t]he law respects form less than substance." (Civ. Code, § 3528.) The question, therefore, is whether the proposed appeal, if successful, would have the effect of overturning the order directing that a 366.26 hearing be held.

As to the finding that reasonable reunification services have been provided to the parents, the answer to that question is yes. Section 366.21, subdivision (g)(1), provides that the juvenile court "shall not order that a hearing pursuant to Section 366.26 be held unless there is clear and convincing evidence that reasonable services have been provided or offered to the parents." If a finding that such reasonable services had been provided were found to be made in error, then the order directing the holding of a 366.26 hearing would be contrary to law. Accordingly, an appeal from a finding of the adequacy of reunification services is, in substance, an attack on the order directing the holding of a 366.26 hearing. Therefore, an appeal from the finding of adequacy violates the statutory prohibition against appeals from orders directing that a 366.26 hearing be held. (*In re Steven H.* (1992) 6 Cal.App.4th 1752, 1755-1757 [8 Cal.Rptr.2d 535]; cf. *In re Elizabeth M.*, *supra*, 232 Cal.App.3d at p. 563 [applying § 366.25, subd. (j)].)

The same is true for challenges to orders terminating reunification services. At the 12-month review hearing, a juvenile court may decline to order a 366.26 hearing and may continue the case for another 6 months "only if it finds that there is a substantial probability that the minor will be returned to physical custody of his or her parent or guardian within six months or that reasonable services have not been provided to the parent or parents."

(§ 366.21, subd. (g)(1).) This inconsistency between the continuation of reunification services and the commencement of 366.26 proceedings is further demonstrated by the requirement that, when setting a 366.26 hearing, the juvenile court must terminate those services. (§ 366.21, subd. (h).) Accordingly, a finding that the termination of services was erroneous is inconsistent with the validity of the order directing a hearing under 366.26. An appeal from such a termination order, therefore, is barred by section 366.26, subdivision (k). (*In re Amber U.* (1992) 3 Cal.App.4th 871, 879-881 [4 Cal.Rptr.2d 726] [applying § 366.26, subd. (k), in context of § 366.22]; *In re Michelle M.* (1992) 4 Cal.App.4th 1024, 1028-1031 [6 Cal.Rptr.2d 172] [same, in context of § 387]; *In re Rebecca H.* (1991) 227 Cal.App.3d 825, 836 [278 Cal.Rptr. 185] [same, in context of § 361.5, subd. (b)]; *In re Catherine S.* (1991) 230 Cal.App.3d 1253, 1256 [281 Cal.Rptr. 746] [same]; cf. *In re Kristin W.* (1990) 222 Cal.App.3d 234, 246 [271 Cal.Rptr. 629] [applying § 366.25, subd. (j)].)

In her reply brief, the mother for the first time makes the contention that this statutory restriction on her right to appeal is unconstitutional. ■ However, it has long been the rule that an appellate court will generally decline to consider any questions not raised in the opening brief. (*Hibernia Sav. and Loan Soc.* v. *Farnham* (1908) 153 Cal. 578, 584 [96 P. 9].) That rule has particular applicability here, where (1) the appellant filed both an opening brief and a supplemental opening brief, in addition to her reply brief, and (2) the point is raised in a mere two sentences, without significant supporting authority or argument. Since no excuse is offered as to why the point was not raised earlier, we deem it to have been waived. (*Ibid.*)[4]

### C. *We Decline to Treat the Appeal as a Petition for an Extraordinary Writ.*

■ Since the findings and orders challenged by the mother are not appealable, the usual course of action would be to dismiss her appeal. In an attempt to avoid that result, the mother asks that we deem her appeal from the finding and order at the 366.21(f) hearing to be a petition for an extraordinary writ.

We would not be the first court to relieve an appellant from the consequences of mistakenly appealing from this type of nonappealable order by treating the purported appeal as a writ petition. (*In re Catherine S., supra,* 230 Cal.App.3d at p. 1256; *In re Rebecca H., supra,* 227 Cal.App.3d at p. 837.) To do so routinely, however, would "undermine the Legislative objective of expediency and finality in child dependency administration" (*In re*

---

[4] While we do not decide the issue, we note that another court has found it to be without merit. (*In re Taya C.* (1991) 2 Cal.App.4th 1, 6-9 [2 Cal.Rptr.2d 810].)

*Amanda B.* (1992) 3 Cal.App.4th 935, 942 [4 Cal.Rptr.2d 922]), and make a mockery of section 366.26, subdivision (k). Accordingly, it has been noted that such relief should be granted only "when the purported appeal was filed within the time that would have been appropriate for a writ filing—sufficiently early to allow [a reviewing] court's determination of the writ before" the juvenile court's ruling on the 366.26 hearing. (*Amanda B., supra*, p. 941.)

In our view, however, this standard is not sufficient to promote the legislative policy at work here. By prohibiting appeals from orders directing that 366.26 hearings be held, but permitting appellate review of those orders by extraordinary writ, subdivision (k) of section 366.26 seeks "to expedite the resolution of juvenile cases [and] to allow children who cannot reunite with their parents to move to a new, permanent home as soon as possible." (*In re Michelle M., supra*, 4 Cal.App.4th at p. 1031.) In particular, it is intended that findings and orders encompassed in a referral order, such as that made at the 366.21(f) hearing in this case, will be reviewed before they have been utilized "at another hearing as foundation for the important ruling terminating parental control and referring the child for adoption" (*Amanda B., supra*, 3 Cal.App.4th at pp. 941-942), or implementing one of the other permanent plans allowed by subdivision (b) of section 366.26.

Appellate review of the referral order is limited to extraordinary writs because all requests for appellate review are not processed the same by appellate courts. A request made in the form of a petition for an extraordinary writ is processed much more expeditiously than is a request made in the form of an appeal. For that reason, a petition seeking the review by writ of an order referring a case to a 366.26 hearing, if filed soon after the order is made, is likely to be considered and decided by the appellate court before the 366.26 hearing is held approximately 120 days later. By contrast, a formal appeal from that same order has no likelihood of being decided within that 120-day window.

Therefore, it is not enough that a notice of appeal be filed "within the time that would have been appropriate for a writ filing" (*Amanda B., supra*, 3 Cal.App.4th at p. 941), because unless the appellate court processes that appeal as a writ, it will not be decided prior to the 366.26 hearing. At some time prior to that hearing, the appellate court must be advised that the appellant wishes his or her appeal to be treated as a writ petition. Only then will the request for appellate review receive the extraordinarily expeditious consideration required to implement the statutory system. In the absence of such a notification, an appeal is not, and should not be deemed to be, comparable to a writ petition.

We recognize that, if all the conditions necessary for the issuance of a writ of mandate are otherwise present, an appellate court has the discretionary

power to treat an unauthorized appeal as a petition for an extraordinary writ. (*Olson* v. *Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720]; *In re Albert B.* (1989) 215 Cal.App.3d 361, 372-373 [263 Cal.Rptr. 694]; and see generally 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 62-64, pp. 86-89.) However, counsel practicing before this court should be aware of when that discretion is likely to be exercised. Accordingly, we hold that, when a party has appealed from an order which is rendered nonappealable by section 366.26, subdivision (k), this court will generally decline to treat that appeal as a petition for an extraordinary writ unless (1) the notice of appeal was filed prior to the date scheduled for the 366.26 hearing, *and* (2) the appellant notifies this court of its request that the appeal be treated as a petition for an extraordinary writ, *and* (3) that notification is made sufficiently early (a) to permit this court's adjudication of the issues raised in the appeal before the 366.26 hearing has been held, or at least (b) to stay the commencement of the 366.26 hearing until that adjudication can occur.

Here, the notice of appeal was filed well before the 366.26 hearing, but the first request to deem the appeal to be a writ petition was not made until the mother's opening brief was filed on November 13, 1991, four months after the 366.26 hearing had been held and decided. Furthermore, that request was buried within the opening brief, virtually guaranteeing that it would not even be seen until briefing was complete months later. For these reasons, the mother's request to treat her appeal as a writ petition is rejected as untimely.

### DISPOSITION

The appeal is dismissed.

Dabney, Acting P. J., and Timlin J., concurred.

A petition for a rehearing was denied November 3, 1992.