[No. S000300. Mar. 17, 1988.]

Adoption of ALEXANDER S., a Minor.
MARK H. et al., Plaintiffs and Respondents, v.
TUDOR G. et al., Defendants and Appellants.

858

COUNSEL

Bernard N. Wolf, under appointment by the Supreme Court, and Abram A. Davis for Defendant and Appellant Nicoleta S.

No appearance for Defendant and Appellant Tudor G.

Jack B. Burstein, Smith & Burstein, William K. Coblentz, Coblentz, Cahen, McCabe & Breyer, Jerome B. Falk, Jr., Howard, Rice, Nemerovski, Canady, Robertson & Falk, John K. Van de Kamp, Attorney General, John Davidson and Winifred Y. Smith, Deputy Attorneys General, for Plaintiffs and Respondents.

OPINION

**PANELLI, J.**—The issue presented is whether the Court of Appeal had jurisdiction to address claims arising from a petition to withdraw consent to adoption. The trial court had denied the natural mother's petition to withdraw consent and no appeal from that judgment was brought within the limitations period of the California Rules of Court. Thus, the judgment denying the petition to withdraw consent became final. Upon the natural mother's timely appeal of a subsequent judgment, the Court of Appeal admitted that it did not have jurisdiction to reach the claims determined by the final judgment denying the petition to withdraw consent. Nevertheless, the court treated the appeal as if it were a petition for habeas corpus in order to reach the belated claims.

We conclude that the Court of Appeal did not have jurisdiction to address the claims determined by the final judgment and that it was error for the court to have reached those claims.

Moreover, we hold that habeas corpus may not be used to collaterally attack a final nonmodifiable judgment in an adoption-related action where the trial court had jurisdiction to render the final judgment.

## FACTS

Nicoleta S. immigrated to the United States from Romania in December of 1983. She was four and one-half months pregnant when she arrived in this country. The natural father of her child, Tudor G., remained in Romania. Nicoleta and Tudor were not married.

Shortly after her arrival in San Francisco, Nicoleta informed a representative at the Catholic Foundation for Immigration and Resettlement that she was considering placing her baby for adoption. The representative referred Nicoleta to a local attorney, Philip Adams, who specializes in private adoptions. Adams introduced Nicoleta to Mark and Loraine H. (hereafter Mr. and Mrs. H.), who were interested in adopting Nicoleta's child. Nicoleta and Mr. and Mrs. H. consented in writing, pursuant to Civil Code section 225m,[1] to joint representation by Adams. Nicoleta verbally agreed to allow Mr. and Mrs. H. to adopt her child in exchange for payment of Nicoleta's medical and living expenses.

Nicoleta gave birth to a son, Alexander S., on April 17, 1984. She signed a consent form allowing Mr. and Mrs. H. to take Alexander to their home from the hospital. Mr. & Mrs. H. have raised Alexander since birth. Alexander is now three and one-half years old.

On April 19, 1984, Mr. and Mrs. H. filed a petition for independent adoption. The Department of Social Services assigned Annamaria Dienes, a social worker, to the case pursuant to section 226.6. Dienes met with Nicoleta on three occasions to explain adoption procedures and the legal consequences of consent. Dienes told Nicoleta that her consent would be necessary to effectuate the adoption and that withdrawal of consent is extremely difficult once consent is given. Dienes also informed Nicoleta of the alternatives to adoption. For example, she explained that Nicoleta could receive financial assistance and child care if she were to keep the child. Nicoleta said she understood.[2] After weighing the alternatives for approximately two months, Nicoleta decided that she did not have the financial resources to raise the child and repay Mr. and Mrs. H. She signed the consent to adoption on June 22, 1984.

---

[1] Section 225m provides in pertinent part: "Notwithstanding any other provision of law, it shall be unethical for an attorney to undertake the representation of both the prospective adopting parents and the natural parents of a child in any negotiations or proceedings in connection with an adoption unless a written consent is obtained from both parties." All statutory references are to the Civil Code unless otherwise indicated.

[2] Nicoleta is a college-educated woman who has studied English for more than a decade. She speaks impeccable English. She does not allege any communication problem during her meetings with Dienes.

One month later, however, Nicoleta notified Dienes that she wanted to withdraw her consent. Nicoleta explained that she had finally found a permanent job. Moreover, she had contacted Tudor G., the natural father in Romania, who was opposed to the adoption. Dienes instructed Nicoleta to notify the court. Nicoleta then called Attorney Adams and notified him of her decision to withdraw consent. Adams informed her that her decision created a conflict of interest and withdrew as joint attorney. Nicoleta and Mr. and Mrs. H. each retained new counsel, who represented them in the trial of the issues involved here.

Nicoleta initiated several actions in the adoption proceeding brought by Mr. and Mrs. H. On October 9, 1984, Nicoleta moved the court for an order establishing visitation. Two days later she filed a petition to withdraw her consent to adoption pursuant to section 226a.[3] She also filed a section 7006 petition to declare the existence of a father-child relationship between Tudor G. and Alexander.

Responding to Nicoleta's petition to withdraw consent, the Department of Social Services filed a report in compliance with section 226a. The report stated that withdrawal of consent was justified. However, the report did not recommend a specific disposition concerning placement of the child, concluding that Alexander would have a suitable home with either Mr. and Mrs. H. or Nicoleta.

A five-day trial commenced on November 8, 1984. The trial was limited to the resolution of the motion for visitation and the petition for withdrawal of consent. The trial judge agreed to postpone trial of the petition for establishment of a father-child relationship so that Tudor would have an opportunity to come to the United States and be heard in the matter.

At the conclusion of the November trial, the trial judge ruled that in order for the petition to be granted under section 226a, two requirements must be satisfied. First, withdrawal of consent must be reasonable under the circumstances, and second, withdrawal must be in the best interests of the

---

[3] Section 226a provides in pertinent part: "Once given, consent of the natural parents to the adoption of the child . . . may not be withdrawn except with court approval. . . . [¶] The State Department of Social Services . . . shall, prior to the hearing of the motion or petition for withdrawal, file a full report with the court and shall appear at the hearing to represent the interests of the child. [¶] . . . If the court finds that withdrawal of the consent to adoption is reasonable in view of all the circumstances, and that withdrawal of the consent will be for the best interests of the child, the court shall approve the withdrawal of the consent; otherwise the court shall withhold its approval. . . . [¶] Any order of the court granting or withholding approval of a withdrawal of a consent to an adoption may be appealed from in the same manner as an order of the juvenile court declaring any person to be a ward of the juvenile court."

child. Addressing the first requirement, the court acknowledged that Adams and Mr. and Mrs. H. made several telephone calls to Nicoleta in an attempt to discover when she planned to sign the consent form. Nevertheless, the trial court expressly found that Nicoleta's consent was knowing, voluntary, and not the result of coercion, duress, or undue influence. As a result, the court found no basis for the consent to be *rescinded*. Moreover, the court determined that Nicoleta was given ample time to make her decision and weigh her alternatives. Despite these findings, the trial court concluded that Nicoleta's decision to seek *withdrawal of consent would be reasonable* because she had been unable to contact the natural father in Romania prior to her consent and her decision may have been affected by the stress of her recent immigration. This finding satisfied the first requirement of section 226a.

Turning to the second requirement, however, the court found that withdrawal of consent would not be in Alexander's best interest. The court found that Mr. and Mrs. H. could provide Alexander with a more stable environment. Moreover, after listening to expert testimony the court determined that Alexander had already bonded to Mr. and Mrs. H. and that he might suffer emotionally if he were separated from them. The court therefore concluded that since the second requirement of section 226a was not established, the petition to withdraw consent should be denied. The court also denied the motion for visitation.

The order denying visitation and the judgment denying the petition to withdraw consent were both entered on January 3, 1985. Notice of entry of the judgment denying the petition to withdraw consent was mailed to Nicoleta by counsel for Mr. and Mrs. H. on January 30, 1985. The judgment was appealable pursuant to section 226a. However, neither Nicoleta nor her attorney filed a notice of appeal within the 60-day period prescribed in rule 2(a) of the California Rules of Court.[4] The judgment denying Nicoleta's petition to withdraw consent became final on April 1, 1985.

Tudor was ultimately unable to leave Romania and the hearing on the section 7006 petition went forward without him. The court filed its judgment on Nicoleta's petition to establish a father-child relationship on April 26, 1985. The court held that although Tudor was the natural father, he was not the "presumed" father within the meaning of section 7004. The court terminated Tudor's custody rights and determined that only Nicoleta's

---

[4] Rule 2(a) provides in pertinent part: "[A] notice of appeal shall be filed within 60 days after the date of mailing notice of entry of judgment by the clerk of the court . . . , or within 60 days after the date of service of written notice of entry of judgment by any party upon the party filing the notice of appeal, or within 180 days after the date of entry of the judgment, whichever is earliest . . . ."

consent was required for the adoption. Notice of entry of this judgment was filed on April 30, 1985.

Nicoleta filed a timely notice of appeal from the judgment denying her petition to declare a father-child relationship. The notice of appeal made no mention of the judgment denying her petition to withdraw consent. However, in her brief on appeal, Nicoleta added her belated claims from the judgment denying withdrawal of consent to her timely appeal of the denial of the father-child relationship.

The Court of Appeal affirmed the denial of the petition to establish a father-child relationship. The court then correctly recognized and frankly admitted that it did not have appellate jurisdiction to reach Nicoleta's claims regarding the denial of her petition to withdraw consent.[5] Nevertheless, the court, on its own initiative and without notice to the parties, chose to treat Nicoleta's belated appeal as a petition for writ of habeas corpus. The court's sole support for its unorthodox decision was a conclusory statement that "[h]abeas corpus is an appropriate remedy for obtaining custody of a child."[6]

Although the issue had not been raised by the parties, the Court of Appeal held that Nicoleta had been denied effective assistance of counsel at the time she gave her consent. In making this determination, the Court of Appeal disregarded the trial court's *express* findings of fact that Nicoleta made a fully informed consent, that Dienes had completely explained the available alternatives to her, and that there was no coercion, duress or undue influence. Nonetheless, the Court of Appeal held that Nicoleta was denied effective assistance of counsel prior to signing consent because Adams failed to provide her with the very information that Dienes had given her prior to consent. Moreover, the Court of Appeal determined that Alexander's interests were not represented in the trial court, even though an attorney from the Department of Social Services had been present specifically to represent Alexander's interests and the trial court had expressly based its judgment on the best interests of the child.

The Court of Appeal issued a writ of habeas corpus, ordered the trial court to vacate its judgment denying Nicoleta's petition for withdrawal of

---

[5] To support its initial determination that it did not have jurisdiction to reach Nicoleta's belated claims, the Court of Appeal cited Code of Civil Procedure section 906, rules 2(a), 45(c) and (e) of the California Rules of Court and *Hollister Convalescent Hosp., Inc.* v. *Rico* (1975) 15 Cal.3d 660 [125 Cal.Rptr. 757, 542 P.2d 1349].

[6] The only authority cited was 3 Witkin, California Procedure (3d ed. 1985) Actions, section 21(c), which provides that habeas corpus is available in a civil action "[w]here a parent seeks custody of a child living with another."

consent, and further ordered the trial court to initiate proceedings consistent with the Court of Appeal's opinion. The court denied the subsequent request by Mr. and Mrs. H. to file a return to the writ. We granted review to assess the Court of Appeal's creative use of habeas corpus.

DISCUSSION

I. *Propriety of Habeas Corpus.*

A. *Procedural Errors.*

The Court of Appeal committed several procedural errors when it treated the belated appeal as a petition for writ of habeas corpus. Initially, there is the problem of jurisdiction. ■ A timely notice of appeal vests jurisdiction in the Court of Appeal. (*Estate of Hanley* (1943) 23 Cal.2d 120, 122 [142 P.2d 423, 149 A.L.R. 1250]; 4 Cal.Jur.3d, Appellate Review, § 155, p. 229.) Nicoleta *never filed* a notice of appeal from the judgment denying her petition to withdraw consent. The judgment was appealable, but Nicoleta did not appeal. Nor did she purport to file a petition for writ of habeas corpus with the Court of Appeal. As a result, although the Court of Appeal had jurisdiction to address Nicoleta's appeal from the judgment denying the father-child relationship, it never gained jurisdiction to address the final judgment denying her petition to withdraw consent. Once the Court of Appeal had addressed the issue of the father-child relationship, it should have stopped there and not addressed Nicoleta's belated claims.

The Court of Appeal also appears to have overlooked Government Code section 68081, which provides in pertinent part: "Before . . . a court of appeal . . . renders a decision . . . based upon an issue which was not proposed or briefed by any party to the proceeding, the court *shall* afford the parties. an opportunity to present their views on the matter through supplemental briefing. If the court fails to afford such an opportunity, a rehearing shall be ordered upon timely petition of any party." (Italics added.) The Court of Appeal suggested in oral argument that habeas corpus might be applicable to this case. On January 7, 1987, following oral argument but prior to the filing of the Court of Appeal's opinion, counsel for Mr. and Mrs. H. requested an opportunity to submit supplemental briefing, pursuant to Government Code section 68081, on the question of habeas corpus relief if the court deemed habeas corpus applicable to the case. The court denied the request.

In denying the request by Mr. and Mrs. H. to submit supplemental briefing, the Court of Appeal's ruling clearly did not comport with the first part of Government Code section 68081. Although Mr. and Mrs. H. did not

petition for rehearing, this omission does not relieve the Court of Appeal of its duty upon timely request to allow supplemental briefing before it renders a decision which was not proposed or briefed by any party.

The Court of Appeal also erred in substituting habeas corpus relief for the available remedy of appeal. ■ It is well settled that "habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment . . . ." (*In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513].) Although represented by counsel at the time, Nicoleta does not assert any excuse for her failure to file a timely notice of appeal from the judgment denying her withdrawal of consent. The Court of Appeal therefore erred in substituting habeas corpus on these facts.

In addition, the Court of Appeal also ignored explicit habeas corpus procedures in fashioning relief. ■ Although Courts of Appeal have original jurisdiction in habeas corpus proceedings (Cal. Const., art. VI, § 10), they must abide by the procedures set forth in Penal Code sections 1473 through 1508.

An application for habeas corpus relief must be made by verified petition. (Pen. Code, § 1474.) In this case, the Court of Appeal granted a writ of habeas corpus in the absence of a verified petition. Moreover, Nicoleta never even requested habeas corpus relief in any of her briefs. ■ In addition, if a petition for habeas corpus makes a prima facie showing, then the opposing side must be given an opportunity to file a return to the petition. (Pen. Code, § 1480; *In re Collins* (1907) 151 Cal. 340, 342 [90 P. 827, 91 P. 397].) Here, the court not only issued the writ sua sponte, but also denied the request by Mr. and Mrs. H. to file a return.

The foregoing discussion enumerates the various procedural errors committed by the Court of Appeal in treating Nicoleta's belated appeal as a petition for writ of habeas corpus. We recognize that there is an exception to the procedural requirements which we have outlined above. It has been held that a court may entertain a belated appeal from a final judgment where a constitutional claim of ineffective assistance of counsel is alleged. (*People* v. *Munoz* (1975) 51 Cal.App.3d 559, 563 [124 Cal.Rptr. 322]; *People* v. *Glaser* (1965) 238 Cal.App.2d 819, 821-824 [48 Cal.Rptr. 427].) Moreover, in one criminal case involving a constitutional claim that the defendant was never warned of the risks of self-representation, an appellate court treated a belated appeal as a petition for writ of habeas corpus even though the judgment had become final and the briefs had not been verified.

(*People* v. *Barlow* (1980) 103 Cal.App.3d 351, 360-364 [163 Cal.Rptr. 664].) ■ However, even where a court treats a belated appeal as a petition for writ of habeas corpus, it is necessary to provide the opposing parties with notice and an opportunity to be heard on the matter. Mr. and Mrs. H. were denied such protection. Moreover, Nicoleta *never raised* the issue of ineffective assistance of counsel in her appellate briefs.

Finally, there is another reason why *Munoz, Glaser,* and *Barlow* do not provide authority for the Court of Appeal's holding in this case. Those cases were criminal actions. It is important to distinguish habeas corpus relief in a criminal case, where the defendant has been unlawfully deprived of his or her liberty, from the appropriateness of habeas corpus in adoption cases. As we shall explain, there are compelling reasons for prohibiting a collateral attack by habeas corpus in an adoption case where such an attack would only result in additional delay, uncertainty and potential harm to the prospective adoptee.

### B. *Propriety of Collateral Attack in Adoption-related Cases.*

As we have noted, the Court of Appeal clearly ignored procedure in fashioning habeas corpus relief. ■ Of primary concern, however, is whether habeas corpus may *ever* be used to collaterally attack a final nonmodifiable judgment in an adoption-related action.[7] A survey of cases permitting habeas corpus relief in child custody actions shows that it has never been used in such a manner.

Witkin enumerates nine types of civil proceedings in which habeas corpus is available. (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 21, pp. 52-53.) The Court of Appeal cited Witkin's third category to support its holding that habeas corpus is appropriate here. The third category provides that habeas corpus is available "[w]here a parent seeks custody of a child living with another." (*Id.* at § 21(c), p. 52.) Within this general category of child custody cases described by Witkin, our research has disclosed six separate subcategories where habeas corpus has been allowed. First, it may be used to enforce an existing right to physical custody established by prior order. (*In re Richard M.* (1975) 14 Cal.3d 783, 789 [122 Cal.Rptr. 531, 537 P.2d

---

[7]We note the distinction between judgments which may be modified upon a showing of changed circumstances, such as judgments pursuant to section 4600 (see *Burchard* v. *Garay* (1986) 42 Cal.3d 531 [229 Cal.Rptr. 800, 724 P.2d 486]; 4 Markey, Cal. Family Law Practice and Procedure (1987) § 60.21[4], p. 60-50), and judgments, such as those under section 226a, which are not similarly modifiable and which for ease of reference we denominate "nonmodifiable" judgments. We do not address the use of habeas corpus to challenge a modifiable judgment.

363]; *In re Barr* (1952) 39 Cal.2d 25, 27 [243 P.2d 787]; 36 Cal.Jur.3d, Habeas Corpus, § 17, p. 37.) Second, habeas corpus may be brought to determine physical custody in the first instance where no previous custody order has issued, i.e., where habeas corpus is not brought as a collateral attack. (*In re Croze* (1956) 145 Cal.App.2d 492, 495 [302 P.2d 595].) Third, habeas corpus is available to modify a modifiable order. (*In re Wren* (1957) 48 Cal.2d 159, 163 [302 P.2d 595].) Fourth, a parent may bring a habeas corpus action to protect a child from imminent danger. (*In re Dowell* (1935) 4 Cal.App.2d 688, 689 [41 P.2d 596].) Fifth, there is authority allowing a natural parent lacking physical custody to bring an original action in habeas corpus where his or her consent to an adoption was required but not obtained. (*In re Reyna* (1976) 55 Cal.App.3d 288 [308 P.2d 329].) Finally, habeas corpus may be brought to collaterally attack a prior order where the court issuing the prior order lacked jurisdiction. (*In re Barr, supra,* 39 Cal.2d at 28; 36 Cal.Jur.3d, Habeas Corpus, § 17, p. 36.)

This case does not fall within any of these subcategories. Category one is inapplicable because there is no prior custody order for Nicoleta to enforce in her favor. Category two is equally inapplicable because custody has already been determined in the first instance. Categories three and four are irrelevant to this case. Category five is also inapposite. Nicoleta was the petitioner of record in both the petition to withdraw consent and the petition to declare a father-child relationship. Her consent was obtained. Moreover, although Tudor did not consent to the adoption, the Court of Appeal affirmed the trial court's determination that his consent was not necessary because he was not a "presumed" father. (See Civ. Code, § 7004; see also *Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 790-791 [218 Cal.Rptr. 39, 705 P.2d 362].) The judgment denying a father-child relationship was affirmed by the Court of Appeal and hence only Nicoleta's consent was required.

Finally, category six is inapplicable because the trial court had jurisdiction to render its judgment denying Nicoleta's petition to withdraw consent. Habeas corpus relief has not been available in an adoption-related proceeding to collaterally attack a final, nonmodifiable judgment where the trial court had jurisdiction to make the adoption judgment.

A review of the past cases shows that the Court of Appeal did not have authority to apply habeas corpus under these facts. We do not rest our decision, however, merely on the determination that the Court of Appeal's use of habeas corpus was unprecedented. Such a limited holding will not prevent the future application of habeas corpus in adoption cases under slightly different circumstances. Out of concern for the welfare of children in adoption actions, we hold that habeas corpus may not be used to collater-

ally attack a final nonmodifiable judgment in an adoption-related action where the trial court had jurisdiction to render the final judgment.

Such a position is not without precedent in our state. In *Ex parte Miller* (1895) 109 Cal. 643 [42 P. 428], the trial court appointed John McComb as the guardian of a minor. The order of appointment was an appealable judgment, but the parents failed to file a notice of appeal within the 60-day limitations period specified in former Code of Civil Procedure section 1715. The judgment became final. In an effort to gain custody of the child, the parents subsequently filed a petition for writ of habeas corpus to collaterally attack the final judgment appointing the guardian. We held that habeas corpus could be brought to collaterally attack a final child custody judgment only in cases where the superior court lacked jurisdiction to make the judgment. (*Id.* at 646.) In *Miller,* as in this case, the trial court had jurisdiction to render judgment. We therefore held in *Miller* that the parents' petition for habeas corpus relief was inappropriate.

We believe that sound public policy offers continued justification for our *Miller* holding. Protracted litigation over the custody of a child may harm the child. For this reason, among others, the United States Supreme Court held that federal habeas corpus could not be used to litigate constitutional claims in child custody matters, observing that "[t]he State's interest in finality is unusually strong in child-custody disputes. The grant of federal habeas would prolong uncertainty for children . . . . It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current 'home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged." (*Lehman* v. *Lycoming County Children's Services* (1982) 458 U.S. 502, 513-514 [73 L.Ed.2d 928, 938, 102 S.Ct. 3231].)

The facts of this case provide a perfect example of the kind of delay that should be avoided. The adoption proceeding has now been stayed for over three years while the courts attempted to resolve the withdrawal-of-consent issue. If Nicoleta is allowed to collaterally attack the trial court's final judgment, the case will be remanded to the trial court. Following the trial court's judgment on remand, a new round of appeals will likely be brought. If the withdrawal-of-consent issue is eventually resolved against Nicoleta, still more hearings will be necessary to finalize the adoption. Meanwhile, Alexander must live with uncertainty. Such delay is made all the more intolerable by the fact that Nicoleta failed to avail herself of her right to appeal.

## II. *Other Error.*

Mr. and Mrs. H. allege error in several other aspects of the Court of Appeal's opinion. For example, they argue that the Court of Appeal should not have overturned the trial court's factual determinations relating to Alexander's best interests, because those findings were supported by substantial evidence. Although there is merit to these other contentions, we do not address them here because the Court of Appeal lacked jurisdiction to reach those issues.

### DISPOSITION

The portion of the Court of Appeal's judgment pertaining to Nicoleta's petition to withdraw consent is vacated for lack of jurisdiction. The remainder of that judgment is affirmed.

Lucas, C. J., Mosk, J., Broussard, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.

The petition of appellant Nicoleta S. for a rehearing was denied May 5, 1988, and the opinion was modified to read as printed above.