# IN THE SUPREME COURT OF CALIFORNIA

In re A.R., a Person Coming Under the Juvenile Court Law.

_____

ALAMEDA COUNTY SOCIAL SERVICES AGENCY,
Plaintiff and Respondent,

v.

M.B.,
Defendant and Appellant.

S260928

First Appellate District, Division One
A158143

Alameda County Superior Court
JD02839802

April 5, 2021

Justice Kruger authored the opinion of the Court, in which
Chief Justice Cantil-Sakauye and Justices Corrigan, Liu,
Cuéllar, Groban, and Jenkins concurred.

In re A.R.

S260928

Opinion of the Court by Kruger, J.

When the juvenile court terminated M.B.'s parental rights to her minor child, M.B. promptly directed her court-appointed attorney to appeal. The attorney mistakenly filed the notice of appeal four days late, however, and the Court of Appeal dismissed M.B.'s appeal as untimely. The question presented is whether, as a result of her attorney's mistake, M.B. has irrevocably lost her right to appeal the termination of her parental rights. We conclude the answer is no. By statute, every parent facing the termination of parental rights is entitled to the assistance of competent counsel (Welf. & Inst. Code, §§ 317, 317.5, 366.26, subd. (f)(2)), as well as the right to appeal an adverse ruling (*id.*, § 366.26, subd. (i)(1)). When an attorney fails to file a timely appeal in accordance with a client's instructions, the parent may seek relief based on the attorney's failure to provide competent representation. Because time is of the essence in matters affecting children's long-term placement, whether relief is granted will depend on the parent's promptness and diligence in pursuing the appeal.

## I.

M.B. gave birth to A.R. in 2016. At the time, M.B. herself was still a minor. Less than a year later, the Alameda County Social Services Agency (Agency) filed a petition under Welfare and Institutions Code section 300 to have A.R. declared a dependent of the court. The operative petition alleged that M.B.

1

had mental health concerns, such as depression, that impeded her ability to care for her child. The juvenile court sustained the petition. Although the court attempted to place A.R. with M.B., M.B. later raised concerns about her ability to care for A.R. while she finished high school. The court ordered A.R. placed in a foster home while M.B. participated in family reunification services.

Several months later, the court entered an order terminating reunification services. The court noted that it was encouraged by the mother's recent progress, however, and expressed openness to M.B. bringing a future petition under Welfare and Institutions Code section 388 (section 388) to modify the order. M.B.'s court-appointed attorney prepared a record documenting M.B.'s progress as a parent and her bond with A.R. The court later found M.B. had made a prima facie case that circumstances had changed so as to warrant modification and accordingly granted her an evidentiary hearing.

Two years after A.R. was first declared a dependent, the juvenile court scheduled a hearing to determine whether to grant M.B.'s section 388 modification petition or, in the alternative, whether to terminate M.B.'s parental rights. (See Welf. & Inst. Code, § 366.26 (section 366.26).) Although M.B. had planned to testify in support of her section 388 petition, on the day of the hearing she had a health emergency that landed her in the emergency room and was unable to attend. Because her original court-appointed attorney was in the process of quitting her job at the time, a new attorney participated in the hearing on M.B.'s behalf.

At the hearing, the court rejected M.B.'s section 388 modification petition, having excluded M.B.'s supporting evidence on technical grounds. The court then turned to the question of whether to permanently sever M.B.'s parental rights. M.B.'s attorney urged the court instead to apply the beneficial parental relationship exception to the termination of parental rights. (§ 366.26, subd. (c)(1)(B)(i).) The court rejected that argument and entered an order terminating M.B.'s parental rights.

Five days after the juvenile court ruled against her, M.B. asked her new court-appointed counsel to file an appeal. Her attorney, however, forgot about the request until it was too late: The attorney did not file a notice of appeal on her client's behalf until four days after the 60-day filing deadline had passed.

The Court of Appeal initially docketed M.B.'s untimely appeal. Some months later, M.B. timely filed her opening brief on the merits along with an application for relief from default. In the application, M.B. acknowledged her counsel's error in filing the notice of appeal and asked the court to consider the notice of appeal to have been timely filed. The Court of Appeal denied the application and dismissed M.B.'s appeal for lack of jurisdiction. M.B. then filed a petition for a writ of habeas corpus in the Court of Appeal, alleging that her attorney's substandard performance had denied her the right to pursue an appeal. The court also denied M.B.'s habeas corpus petition, albeit without prejudice to refiling it in the trial court.

We granted review, directing the parties to address two issues: (1) whether a parent has the right to challenge her counsel's failure to file a timely notice of appeal from an order

terminating her parental rights, and (2) if she has such a right, the proper procedures for raising such a claim.

## II.

## A.

The juvenile dependency law is designed "to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (Welf. & Inst. Code, § 300.2.) The law authorizes a court to declare a child facing abuse or neglect to be a dependent of the court. (*Id.*, § 300.) Once the child has been declared a dependent, "the statutory scheme is designed to allow retention of parental rights to the greatest degree consistent with the child's safety and welfare, and to return full custody and control to the parents or guardians if, and as soon as, the circumstances warrant." (*In re Ethan C.* (2012) 54 Cal.4th 610, 625.) "[T]he general rule is that when a dependent child is removed from the parent's or guardian's physical custody, child welfare services, including family reunification services, must be offered." (*Id.* at p. 626.) The court then conducts periodic check-ins to determine whether the child may safely be returned to the parent or guardian. (*Ibid.*) If the answer is no, the court may decide to terminate parental rights and order that the child be placed for adoption. (*Ibid.*; see § 366.26, subds. (b)(1), (c)(1); see generally *Ethan C.*, at pp. 623–626; *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 247–249.)

While terminating parental rights is sometimes necessary to secure the child's long-term welfare, it is a uniquely serious

step — one widely recognized as ranking "among the most severe forms of state action." (*M. L. B. v. S. L. J.* (1996) 519 U.S. 102, 128.) To guard against the risk that parental rights will be terminated in error, the Legislature has enacted several significant procedural protections. (*In re James F.* (2008) 42 Cal.4th 901, 904.) Two of those protections are central to the issue we confront in this case.

The first protection is the right to counsel. Depending on the circumstances of the case, constitutional due process sometimes demands the appointment of counsel for a parent facing the termination of rights. (*Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 32; *In re Sade C.* (1996) 13 Cal.4th 952, 984.) But even when court-appointed counsel may not be constitutionally required, California statutory law has long required the appointment of counsel in connection with parental rights termination proceedings. (Welf. & Inst. Code, §§ 317 (section 317), 317.5 (section 317.5), 366.26, subd. (f)(2).) The right dates back to 1965, when the Legislature granted indigent parents the right to court-appointed counsel in termination hearings. (Civ. Code, former § 237.5, added by Stats. 1965, ch. 1530, § 3, p. 3624, repealed by Stats. 1992, ch. 162, § 2, p. 464.) Two decades later, the Legislature expanded that guarantee to any dependency proceeding in which out-of-home placement is at stake. (§ 317, subd. (b), added by Stats. 1987, ch. 1485, § 21, p. 5613.) Finally, in 1994, the Legislature added a provision specifying, in unusually explicit terms, that "[a]ll parties who are represented by counsel at dependency proceedings" are "entitled to *competent* counsel." (§ 317.5, subd. (a), added by Stats. 1994, ch. 1073, § 1, p. 6425, italics added.) The amendment makes clear that under

California law, every parent facing termination of parental rights is entitled to competent representation.

The second procedural protection is the right of appeal. Parents whose parental rights have been terminated are entitled to appeal the order (§ 366.26, subd. (i)(1); see *In re Matthew C.* (1993) 6 Cal.4th 386, 393), and no posttermination petition for adoption may be granted before "the appellate rights of the natural parents have been exhausted" (§ 366.26, subd. (j)). After the parent's appellate rights have been exhausted, however, the juvenile court's termination order becomes "conclusive and binding," and may not be set aside, changed, or modified. (*Id.*, subd. (i)(1).)

The issue in this case concerns what happens when denial of the first protection — the right to competent counsel — threatens the second protection, the right of appeal. Ordinarily, the first step in pursuing an appeal is to file a timely notice of appeal — which, under current rules of court, means filing within 60 days of the challenged order. (Cal. Rules of Court, rule 8.406(a)(1).) This is a jurisdictional deadline, meaning that courts lack the power to extend it, regardless of whether failure to meet the deadline was "wilful [*sic*] or inadvertent," "reasonable or unreasonable," or rooted in "good faith or not." (*Estate of Hanley* (1943) 23 Cal.2d 120, 122 (*Hanley*); see Cal. Rules of Court, rules 8.60(d), 8.104(b).) Here, M.B. and her appointed attorney both attest that M.B. failed to file a timely notice of appeal solely because her attorney failed to competently discharge that responsibility. M.B. argues that the appropriate remedy for the denial of her statutory entitlement to competent representation is relief from default, which would allow her to pursue her appeal notwithstanding her attorney's error. With certain caveats described below, we agree.

6

## B.

As a general rule, a parent who has not received competent representation in juvenile dependency proceedings is entitled to seek relief based on denial of the statutory right. A long line of appellate authority, beginning with *In re Kristin H.* (1996) 46 Cal.App.4th 1635 (*Kristin H.*), so holds; we now affirm the correctness of these decisions.

In *Kristin H.*, the Court of Appeal considered a habeas corpus petition filed by mother who claimed her attorney performed incompetently by failing to investigate and introduce favorable evidence at the dispositional stage of juvenile dependency proceedings. (*Kristin H.*, *supra*, 46 Cal.App.4th at p. 1658.)[1] Before *Kristin H.*, appellate courts had agreed that the right to counsel rooted in constitutional due process carried with it a right to the effective assistance of counsel. (*Kristin H.*

---

[1]  Despite its familiar application in cases concerning official confinement, California has long recognized habeas as a vehicle for challenging child custody decisions. As early as 1892, this court entertained a habeas petition by a mother seeking custody of her child from the child's uncle, on the ground that the superior court order appointing the uncle guardian was void for lack of jurisdiction. (*In re Gates* (1892) 95 Cal. 461–462.) The logic underlying the habeas petition was that the child had been "unlawfully restrained of her liberty" (*id.* at p. 461) by the guardian; we ruled that since the superior court had lacked jurisdiction, the child was to be "freed from all illegal restraint" (*id.* at p. 462) and allowed to choose where to live. Since then, this court has recognized that habeas corpus may be used to "assert custody rights" as well as to "secure relief from confinement resulting from criminal prosecution." (*In re Richard M.* (1975) 14 Cal.3d 783, 790; see *id.* at pp. 789–791; accord, *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 866–867; *In re Cody R.* (2018) 30 Cal.App.5th 381, 392–393 [discussing the availability of habeas corpus in the dependency context].)

at p. 1659, citing, inter alia, *In re Christina P.* (1985) 175 Cal.App.3d 115, 129.) But courts disagreed about whether the same was true of the statutory right to counsel secured by section 317. (*Kristin H.*, at p. 1660.) Even before the Legislature amended the statute to provide an explicit guarantee of competent counsel, some courts analogized to ineffective assistance of counsel in the criminal context and "recognized claims based on violations of a statutory right to counsel." (*Ibid.*) Some courts, however, refused to recognize claims based on violations of the statutory right to competent counsel, reasoning that dependency cases are civil proceedings in which "the paramount concern is the child's welfare, and in particular the child's interest in the finality of the proceedings." (*Id.* at p. 1664; see also *id.* at p. 1660, citing, inter alia, *In re Michael S.* (1981) 127 Cal.App.3d 348, 363–364.) In these courts' view, "allowing claims of ineffective assistance of counsel will cause delay and consequently does not serve the best interests of the child." (*Kristin H.*, at p. 1660; see also *id.* at pp. 1665–1667 [cataloguing additional cases].)

*Kristin H.* concluded the Legislature effectively rejected the latter approach in 1994 when it added the provision guaranteeing representation by "*competent* counsel." (§ 317.5, subd. (a), italics added.) The court considered the wording choice "particularly meaningful, as California case law defining the right to effective assistance of counsel uses this word in the test for determining adequacy of counsel" in adjudicating claims of ineffective assistance. (*Kristin H.*, *supra*, 46 Cal.App.4th at p. 1662.) It then noted that the legislative history of the provision, too, supported the conclusion that "the statutory right to competent counsel carries with it the right to judicial review." (*Id.* at p. 1663.) In particular, the court highlighted portions of

the legislative history indicating that the 1994 revisions were intended to address the " 'problem of a lack of any meaningful process' " whereby parties in dependency proceedings could " 'complain about their appointed counsel,' " and analogizing the statutory right to counsel to the guarantees that would be afforded a criminal defendant. (*Ibid.*, quoting Assem. Com. on Judiciary, Rep. on Sen. Bill No. 783 (1993–1994 Reg. Sess.) as amended Apr. 13, 1994, p. 2.) In sum, the *Kristin H.* court saw "nothing vague or ambiguous about th[e] directive" to provide competent representation: Because the Legislature could not have intended to create a " 'hollow right,' " the statutory right to competent representation "must include the right to seek review of claims of incompetence of counsel." (*Kristin H.*, at pp. 1660, 1662.)

The *Kristin H.* court acknowledged prior courts' concerns that claims of incompetent representation would delay the finality of dependency proceedings. The court observed, however, that the child's interest in finality is not the only value to consider; the child also has an important interest in ensuring that her relationship with a parent is not erroneously severed because of the incompetence of the parent's lawyer. (*Kristin H.*, *supra*, 46 Cal.App.4th at p. 1664.) The court also explained that even if finality interests do not foreclose relief entirely, they do require that parents act promptly in raising their claims. The court cautioned that "untimeliness may in many cases preclude review of claims of ineffective assistance of counsel," since "[n]owhere is timeliness more important than in a dependency proceeding where a delay of months may seem like 'forever' to a young child." (*Id.* at p. 1667.) Applying these principles to the case before it, the *Kristin H.* court permitted the mother to proceed with her habeas petition challenging her attorney's

juvenile court performance. (*Id.* at p. 1642.) Since *Kristin H.*, the Courts of Appeal have uniformly agreed that parents may seek relief for incompetent representation in juvenile court proceedings. (See, e.g., *In re Paul W.* (2007) 151 Cal.App.4th 37, 52–54; *In re Darlice C.* (2003) 105 Cal.App.4th 459, 465–466; *In re O. S.* (2002) 102 Cal.App.4th 1402, 1406 & fn. 2; *In re Carrie M.* (2001) 90 Cal.App.4th 530, 533–534.) Neither the Agency nor A.R. disputes the point. We, too, agree that a parent may seek relief for deprivation of the statutory right to competent representation secured by sections 317 and 317.5.

## C.

The central point of dispute between the parties concerns whether the right to seek relief for incompetent representation lapses with the jurisdictional deadline for filing a notice of appeal from the parental rights termination order — even when counsel's incompetence is the very reason no filing has been made by that deadline. The Agency and A.R. contend that, no matter the reasons for the delayed filing, the passage of the deadline marks the point at which the child's interest in avoiding unnecessary delay definitively overcomes any countervailing interests the parent may have.

We emphatically agree that dependent children have a critical interest in avoiding unnecessary delays to their long-term placement. (See, e.g., *In re Sade C.*, *supra*, 13 Cal.4th at p. 993 [describing the "pointed and concrete harm" a child may suffer from protracted custody proceedings]; *Lehman v. Lycoming County Children's Services* (1982) 458 U.S. 502, 512 (*Lehman*) [referencing the "exceptional need for finality in child-custody disputes"].) But it does not follow that parents must automatically lose the ability to seek redress for incompetent

representation as soon as the time for filing the notice of appeal has passed. Certainly nothing in the statute says so. While the statute makes an order terminating parental rights "conclusive and binding," it does so expressly subject to the parent's right of appeal. (§ 366.26, subd. (i)(1) ["nothing in this section shall be construed to limit the right to appeal the [termination] order"].) And to underscore the point, the statute further provides that the child may not be adopted until "the appellate rights of the natural parents have been exhausted." (*Id.*, subd. (j).) The statute does not purport to deny appellate rights to a parent whose appeal has been untimely filed because of counsel's mistakes.

And while finality is a critically important interest in termination proceedings, it is not the only interest at stake. Children and parents alike also have an interest in ensuring that the parent-child relationship is not erroneously abridged. (*Kristin H.*, *supra*, 46 Cal.App.4th at p. 1664.) The Legislature sought to protect this interest in accuracy by affording parents a right to competent counsel, as well as a right of appellate review. (§§ 317, 317.5, 366.26, subd. (i).) When parents raise a timely claim that the deprivation of the first right has worked to undermine the other, the logical remedy is to afford them the appeal to which they are statutorily entitled, and thus to ensure the decision to terminate parental rights has been made accurately before it is made final.

The Agency and A.R. contend that any effort to revive an appeal that occurs in the absence of a timely notice is prohibited as a collateral attack on the juvenile court's termination order. They rely for this argument primarily on *Adoption of Alexander S.*, *supra*, 44 Cal.3d 857 (*Alexander S.*). In *Alexander S.*, a birth mother initially consented to adoption, but later changed her

11

mind and petitioned to withdraw the consent. The petition was denied, and she did not appeal. Some months later, the birth mother appealed a different order and sought in her appellate brief to challenge the denial of her petition to withdraw consent as well. The Court of Appeal acknowledged the time for appealing the latter order had already lapsed, but attempted to resuscitate the claim by treating the appeal as a petition for writ of habeas corpus based on the incompetent performance of the counsel who advised her to sign the consent to adoption. We reversed, explaining: "Out of concern for the welfare of children in adoption actions, we hold that habeas corpus may not be used to collaterally attack a final nonmodifiable judgment in an adoption-related action where the trial court had jurisdiction to render the final judgment." (*Alexander S.*, at pp. 867–868.)

*Alexander S.* relied in turn on *Ex parte Miller* (1895) 109 Cal. 643. In that case, parents who had failed to file a timely appeal of an order appointing a third party as the guardian of their child later filed a habeas petition seeking to collaterally attack the final appointment order on its merits. This court rejected the petition, explaining that habeas corpus would lie only to attack the jurisdiction of the court that entered the guardianship order, not to establish a right to the custody of the child as against her appointed guardian. (*Miller*, at pp. 646–647.) *Alexander S.* affirmed *Miller*'s holding, concluding that "sound public policy offers continued justification" for a rule that avoids "[p]rotracted litigation over the custody of a child." (*Alexander S.*, *supra*, 44 Cal.3d at p. 868.)

Neither *Alexander S.* nor *Miller* speaks to the situation we confront here. Each of those cases concerned efforts to repackage untimely appeals from certain final custody-related orders as requests for habeas relief, based on alleged defects

12

that could have been fully addressed on appeal. In both cases, those efforts were barred by the settled rule that " 'habeas corpus cannot serve as a substitute for an appeal . . . .' " (*Alexander S., supra,* 44 Cal.3d at p. 865, quoting *In re Dixon* (1953) 41 Cal.2d 756, 759.) In neither case did the court consider a habeas petition raising a claim of incompetent representation that resulted in the loss of any opportunity to appeal. Indeed, *Alexander S.* made this point explicitly, noting that the birth mother in that case did not "assert any excuse for her failure to file a timely notice of appeal" from the order denying her withdrawal of consent. (*Alexander S.*, at p. 865; accord, *id.* at p. 863.) The rule that habeas cannot substitute for an appeal has limited relevance where, as here, the only issue is whether the litigant will be permitted the opportunity to pursue her appeal in the first place.

Notwithstanding the differences between *Alexander S., Miller*, and this case, we reaffirm those cases' emphasis on the importance of avoiding protracted litigation over matters concerning a child's long-term placement. (*Alexander S., supra,* 44 Cal.3d at p. 868.) As we will explain further below, this policy requires courts to consider whether parents have acted promptly and diligently in pursuing their rights before granting relief. But the policy does not erect an absolute bar to relief for the parent whose attorney mistakenly files the notice of appeal after the deadline or fails to file it entirely despite a request from the parent to do so, thereby denying the parent the benefit of important statutory protections against erroneous decisions. In many cases the risk of delay is minimal when compared to the ordinary timing of an appeal: Here, for example, M.B.'s notice of appeal was filed just four days late; M.B. promptly attempted to remedy the error, and filed her appellate brief on time. To

categorically cut off any possibility of appeal in such case would not serve any meaningful interest in avoiding unnecessary delay. It would instead serve only to penalize the parent for relying on the putatively "competent counsel" to which she is statutorily entitled. (§ 317.5, subd. (a).)[2]

## D.

Having concluded that parents may raise an incompetent representation claim based on the untimely filing of a notice of appeal, we now address several questions about the contours of such claims and the procedures for raising them.

The first question concerns the substantive showing necessary to establish a prima facie case for relief. In general, "[a] parent seeking review of a claimed violation of section 317.5 must show a violation of the statute, i.e., that counsel failed to act in a manner to be expected of reasonably competent attorneys practicing in the field of juvenile dependency law." (*Kristin H.*, *supra*, 46 Cal.App.4th at pp. 1667–1668.) As the high court has observed, "a lawyer who disregards specific instructions from [his or her client] to file a notice of appeal acts in a manner that is professionally unreasonable." (*Roe v. Flores-Ortega* (2000) 528 U.S. 470, 477 (*Flores-Ortega*).) A parent therefore generally will satisfy this requirement by showing

---

[2] We disapprove the following cases to the extent they are inconsistent with the conclusion that parents in M.B.'s situation may be entitled to relief from default: *In re J.A.* (2019) 43 Cal.App.5th 49, 56; *In re Z.S.* (2015) 235 Cal.App.4th 754, 769–770; *In re Ryan R.* (2004) 122 Cal.App.4th 595, 598; *In re Alyssa H.* (1994) 22 Cal.App.4th 1249, 1254; *In re Ricky H.* (1992) 10 Cal.App.4th 552, 560; *In re Issac J.* (1992) 4 Cal.App.4th 525, 533; *In re A.M.* (1989) 216 Cal.App.3d 319, 322.

that counsel was directed to file an appeal on behalf of a parent but failed to do so in a timely manner.[3]

But a showing of incompetence is usually only the first step in making out a claim of error based on the ineffective assistance of counsel; the represented party ordinarily must also establish that the attorney's unprofessional performance was prejudicial. (*Kristin H.*, *supra*, 46 Cal.App.4th at p. 1668.) Where, as here, the claim of error is based on violation of a state statute, the test for prejudice is generally whether "it is reasonably probable that a result more favorable to [her] would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

The parties disagree about the showing necessary to satisfy this prong of the analysis. The Agency contends that in a case concerning a late-filed notice of appeal, a parent must demonstrate that there is a reasonable probability she would have prevailed on appeal if the notice of appeal had been timely filed. M.B. counters that no such showing should be required; it is enough for the parent to show that she directed her attorney to appeal and the attorney failed to file a timely notice.

We reject the Agency's contention that *Watson* imposes a likelihood-of-success condition on the right to pursue an appeal in these circumstances. For a parent whose attorney has incompetently failed to file a timely appeal, the relevant injury is not denial of any specific substantive appellate victory; it is the opportunity to appeal at all. Confronting a similar question in the context of criminal appeals, the United States Supreme

---

[3] We do not here address a situation in which the lawyer concludes that there are no arguable grounds for appeal. (See *In re Sade C.*, *supra*, 13 Cal.4th at p. 982.)

Court has held that when attorney incompetence deprives a criminal defendant of the right to pursue an appeal, the defendant need not show "some likelihood of success on appeal" in order to secure relief. (*Rodriquez v. United States* (1969) 395 U.S. 327, 330.) So long as there are "substantial reasons to believe [a losing party] would have appealed" were it not for attorney incompetence, a party seeking to revive the appeal can demonstrate prejudice. (*Flores-Ortega, supra,* 528 U.S. at p. 486; see also *Garza v. Idaho* (2019) ___ U.S. ___, ___ [139 S.Ct. 738, 742] ["[W]hen an attorney's deficient performance costs a defendant an appeal that the defendant would have otherwise pursued, prejudice to the defendant should be presumed."].) We take a similar approach here: To ascertain prejudice, we focus on whether the parent would have taken a timely appeal, without requiring the parent to shoulder the further burden of demonstrating the appeal was likely to be successful.

The final, and crucial, element of any successful claim to relief based on incompetent representation is the claimant's promptness and diligence in pursuing an appeal. These requirements are not unique to dependency proceedings. In *In re Benoit* (1973) 10 Cal.3d 72 (*Benoit*), for example, this court held the so-called constructive filing doctrine offered a form of relief from default to prisoners whose attorneys failed to file timely notices of appeal from their criminal convictions. We advised, however, that the availability of this relief would depend on the prisoner's diligence in pursuing the appeal. We cautioned that courts should not "indiscriminately permit" relief from default for a defendant who "has displayed no diligence in seeing that his attorney has discharged [his] responsibility." (*Id.* at p. 89; see also *In re Jordan* (1992) 4 Cal.4th 116, 122

[discussing the appropriate test for assessing a prisoner's diligence].)

What we said in *Benoit* and *Jordan* applies with even greater force in the dependency context, where the costs of delay are particularly acute. The purpose of the dependency law is to promote the well-being of children, ultimately by ensuring a safe and stable permanent home. A parent who seeks to challenge a termination order therefore must act promptly to avoid jeopardizing the child's long-term placement. Here, the notice of appeal was filed just four days late, and M.B. promptly sought relief from default along with her timely filed brief on the merits, thus minimizing the risks of delay. This is not to suggest that a four-day delay is the outer limit for promptness. But, as the court advised in *Kristin H.*, in many other cases the failure to promptly seek relief "may . . . preclude review of claims of ineffective assistance of counsel," since "[n]owhere is timeliness more important than in a dependency proceeding where a delay of months may seem like 'forever' to a young child." (*Kristin H.*, *supra*, 46 Cal.App.4th at p. 1667.)

We next address the proper procedures for raising a claim of incompetent representation based on counsel's late filing of a notice of appeal. We address two primary issues. First, M.B. invites us to extend the constructive filing doctrine as announced and applied in *Benoit*, to the juvenile dependency context. Second, M.B. asks us to hold, as some courts have done, that a constructive filing claim may be made by means of a streamlined motion procedure. (See, e.g., *People v. Zarazua* (2009) 179 Cal.App.4th 1054, 1062 (*Zarazua*).)

As to M.B.'s first point, we see no reason to extend the constructive filing doctrine to this context. That doctrine developed in the context of prison filings and has, historically,

been limited to cases involving incarcerated appellants who are unable to personally ensure the timely filing of court documents, and thus must rely on others, including prison officials and counsel. (See *Hollister Convalescent Hosp., Inc. v. Rico* (1975) 15 Cal.3d 660, 669 (*Hollister*); see also *Silverbrand v. County of Los Angeles* (2009) 46 Cal.4th 106, 129 [describing the doctrine as a means of "ensur[ing]" that prisoners "are not denied access to the appellate courts by obstacles . . . other litigants readily could overcome"].) For such litigants, we have explained, "diligent but futile efforts" to file a timely appeal may be treated as "*in themselves* tantamount to actual filing of a timely appeal" — letting a court construe the filing as timely, and in that way overcoming any jurisdictional barrier to appellate review. (*Hollister*, at p. 669.)

Parents in M.B.'s position are entitled to seek relief on a different and independently sufficient basis: Like other parents whose lawyers have made serious mistakes in the representation, they are entitled to seek a remedy for the violation of their statutory right to competent representation. (See, e.g., *In re Jackson W.* (2010) 184 Cal.App.4th 247, 261; *In re Dennis H.* (2001) 88 Cal.App.4th 94, 98; *In re O. S.*, *supra*, 102 Cal.App.4th at p. 1406 & fn. 2; *In re Eileen A.* (2000) 84 Cal.App.4th 1248, 1259–1261, disapproved on another ground in *In re Zeth S.* (2003) 31 Cal.4th 396, 413–414.) Where, as here, a parent's failure to file a timely notice of appeal is the result of counsel's error, reinstating an otherwise-defaulted appeal is generally the only meaningful way to safeguard the statutory right to competent representation.

Incompetent representation claims in dependency cases generally have been raised by means of a petition for habeas corpus, like the one filed in *Kristin H.* (See, e.g., *In re Carrie M.*,

*supra*, 90 Cal.App.4th at pp. 533–534; cf. *In re Jackson W.*, *supra*, 184 Cal.App.4th at p. 258 [observing that the "customary way" to raise an ineffective assistance of counsel claim is through habeas corpus].)[4] This is partly because habeas allows for consideration of matters outside the appellate record, including evaluation of counsel's decisions and tactics, which is a necessary focus of many ineffective assistance claims. (E.g., *In re Darlice C.*, *supra*, 105 Cal.App.4th at p. 463.) But it is also because habeas carries with it broad authority to fashion appropriate relief for the claimed violation. (E.g., *People v. Booth* (2016) 3 Cal.App.5th 1284, 1312.) This authority includes the power to conduct such additional proceedings as may be appropriate to remedy the statutory or constitutional deprivations alleged, even where those proceedings would normally be barred by jurisdictional filing deadlines. (*In re Byrnes* (1945) 26 Cal.2d 824, 827–828; see also, e.g., *Flores-Ortega*, *supra*, 528 U.S. at p. 485 [addressing the circumstances under which a criminal defendant's appellate rights can be reinstated on account of his or her attorney's negligent failure to file a timely notice of appeal].) Where the deprivation in question stems from a defaulted appeal, habeas offers an avenue for relief from default.[5]

---

[4] Insofar as this opinion describes the practice for raising incompetent representation claims in dependency cases, it should not be read to cast any doubt on the practices courts have developed for handling constructive filing claims. (See, e.g., *Zarazua*, *supra*, 179 Cal.App.4th at p. 1062.)

[5] This remedy follows from the nature of the claim. As noted above, we have long held that the time for filing a notice of appeal cannot be extended, even for reasons of equity. " 'In the absence of statutory authorization, neither the trial nor

This brings us to M.B.'s second point. Although M.B. acknowledges that habeas is the usual path for relief based on claims of incompetent representation in dependency cases, she raises practical concerns about following the same course in cases seeking to reinstate late-filed appeals. As M.B. emphasizes, habeas typically requires compliance with the formal procedures set out in Penal Code sections 1473 through 1508 (see *Alexander S.*, *supra*, 44 Cal.3d 865), beginning with the filing of a verified petition for habeas corpus and including, as appropriate, formal responses and the holding of an evidentiary hearing (*People v. Romero* (1994) 8 Cal.4th 728, 744). M.B. contends that use of these formal procedures will cause needless delay, a result all parties wish to avoid.

As an initial matter, we do not agree that obtaining relief through formal habeas procedures necessarily "must be slow or

___

appellate courts may extend or shorten the time for appeal [citation], even to relieve against mistake, inadvertence, accident, or misfortune [citations]. . . . If it appears that the appeal was not taken within the 60-day period, the court has no discretion but must dismiss the appeal of its own motion even if no objection is made.' " (*Hollister*, *supra*, 15 Cal.3d at pp. 666–667, quoting *Hanley*, *supra*, 23 Cal.2d at p. 123; see also *Maynard v. Brandon* (2005) 36 Cal.4th 364, 372–373.) But we have also made clear this jurisdictional bar is absolute only " '[i]n the absence of statutory authorization' " to extend the time for filing. (*Id.* at p. 373.) In the case of a claim concerning deprivation of the statutory right to competent representation — collateral relief our courts have previously recognized is available to parents in the dependency context (see *ante*, pp. 7–10 & fn. 1) — section 317.5 and the habeas corpus law provide the necessary authorization to override the interests in finality reflected by the jurisdictional rule, at least so long as the extension is of sufficiently short duration that it will not prejudice the interests of others with a stake in the dependency proceedings (see pp. 16–17, *ante*).

cumbersome." (*People v. Romero*, *supra*, 8 Cal.4th at p. 744.) In criminal-related habeas matters, we have noted that while courts must give the opposing party the opportunity to file a return following the issuance of a writ of habeas corpus or order to show cause, the opportunity may be waived, or, depending on the exigencies of the situation, may be required within "as little as 24 hours." (*Ibid.*) Indeed, the Rules of Court vest courts with significant discretion to expedite and simplify proceedings. (See, e.g., Cal. Rules of Court, rule 8.386(d)(1) ["Unless the court orders otherwise, within 30 days after the respondent files a return, the petitioner may serve and file a traverse."].)

That said, we agree with M.B. that strict adherence to the full Penal Code habeas procedures is neither necessary nor practical in the context of an application for relief from default based on an attorney's late filing in a dependency case.[6] Although the Legislature has recognized that the Penal Code provisions may apply outside the criminal context, those provisions were, for the most part, developed in — and in some cases are explicitly aimed at — the penal context and other cases involving official custody or restraint. (See, e.g., Pen. Code, § 1473, subd. (a) [authorizing habeas corpus relief for "[a] person unlawfully imprisoned or restrained of their liberty"]; *id.*, § 1487 [governing discharge of prisoners]; but see *id.*, § 1507 [describing procedures for a petition made "by or on behalf of any person other than a defendant in a criminal case"].) Courts have appropriately found the Penal Code provisions controlling in their handling of habeas corpus petitions seeking relief based

---

[6]    We emphasize that we do not here address the procedures required to obtain habeas corpus relief in criminal matters or other contexts; our opinion is strictly limited to the dependency context.

on incompetent representation in dependency proceedings. (See, e.g., *Alexander S.*, *supra*, 44 Cal.3d at p. 865.)  But they have also recognized that the rules must in some instances be adapted to fit the dependency context.  (*In re Paul W.*, *supra*, 151 Cal.App.4th at p. 53 [" 'Because the rules on habeas corpus petitions evolved in the context of prisoners asserting unlawful confinement or conditions of confinement, they do not fit the dependency context well.' "]; accord, *id.* at p. 67 (conc. opn. of Bamattre-Manoukian, Acting P. J.) [observing that the standard framework for habeas does not "provide an ideal model for a habeas proceeding raising ineffective assistance of counsel in a dependency setting"].)

It follows that courts can and should handle claims seeking to revive appeals from the termination of parental rights in a manner that is sensitive to both the importance of speed and finality in this context and the precise nature of the claim at hand.  As with all dependency-related proceedings, the court has an obligation to ensure the matter is resolved as expediently as possible, to avoid delays that may destabilize a child's long-term placement.  (Cf. Welf. & Inst. Code, § 395, subd. (a)(1) [entitling dependency appeals to priority consideration].)  Courts should also recognize that this type of claim is in many ways unique, even among incompetent representation claims raised in dependency cases.  To evaluate claims like M.B.'s does not demand any significant evidentiary inquiry into counsel's strategic judgment or litigation tactics; it instead requires a more straightforward inquiry into the nature of the parent's instructions to her attorney and her promptness and diligence in pursuing her appellate rights.

In determining the appropriate procedures, the court must give all parties notice and an opportunity to be heard, ensuring

adequate exploration of the issues relevant to the granting of relief. (*Alexander S., supra*, 44 Cal.3d at p. 865.) But in the absence of contrary directives, a court has substantial discretion to determine the specific procedures to be employed in handling applications for relief from default based on an attorney's late filing. (See *Weiss v. People ex rel. Dept. of Transportation* (2020) 9 Cal.5th 840, 857 ["[W]hen no procedure is specified by statute or rule, judges may fashion nonstatutory procedures suitable to the specific cases before them," though they "do not have the authority to adopt procedures or policies that conflict with statutory law or the Rules of Court."].) We hasten to add, however, that the Legislature may always choose to provide more specific guidance about the procedures to be followed, and the Judicial Council is likewise empowered to adopt statewide rules consistent with statutory procedures. (*In re Cook* (2019) 7 Cal.5th 439, 459; *Weiss*, at p. 857.)

There remains a final procedural question: To which court should the application for relief be addressed? We conclude that as a general matter, an application seeking to pursue or perfect an appeal is properly directed to the Court of Appeal rather than the superior court, since, after all, "the court in which the appeal is pending is the court which can relieve from default." (*In re Gonsalves* (1957) 48 Cal.2d 638, 646; see *id.* at pp. 641–642 [directing the Court of Appeal to entertain the defendant's petition for habeas corpus seeking relief from default on his appeal]; accord, *Benoit, supra*, 10 Cal.3d at pp. 75, 89; *People v. Lyons* (2009) 178 Cal.App.4th 1355, 1363 [observing that "since 1972, only the appellate court can grant '*Benoit*' relief"].) We see no reason why relief from default in a juvenile dependency appeal should operate differently.

## III.

In this case, the Court of Appeal dismissed M.B.'s appeal as untimely, notwithstanding her efforts to demonstrate that the untimeliness of her notice of appeal was the result of incompetent performance by her attorney. We today hold that when their court-appointed attorneys have failed to timely file a notice of appeal of an order terminating parental rights, parents whose rights have been terminated may seek relief based on the denial of the statutory right to the assistance of competent counsel. (§§ 317, 317.5.) To succeed in such a claim, parents must show that they would have filed a timely appeal absent attorney error and that they diligently sought relief from default within a reasonable time frame, considering the child's " 'unusually strong' " interest in finality. (*Alexander S., supra,* 44 Cal.3d at p. 868, quoting *Lehman, supra,* 458 U.S. at p. 513.)

Whether M.B. has made the required showing is a matter for the Court of Appeal to determine in the first instance. We thus reverse the judgment of the Court of Appeal and remand for further proceedings not inconsistent with this opinion.

**KRUGER, J.**

**We Concur:**
**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**GROBAN, J.**
**JENKINS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re A.R.

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP order filed 1/21/20 – 1st Dist., Div. 1
**Rehearing Granted**

_____

**Opinion No.** S260928
**Date Filed:**  April 5, 2021

_____

**Court:**  Superior
**County:**  Alameda
**Judge:**  Charles A. Smiley III

_____

**Counsel:**

Louise E. Collari, under appointment by the Supreme Court, for Defendant and Appellant.

Michael J. Levy and Catherine Blakemore for California Commission on Access to Justice as Amicus Curiae on behalf of Defendant and Appellant.

Raymond A. Cardozo, Dennis A. Fischer, Scott M. Reddie, Robin Meadow, Robert Gerstein, Rex S.  Heinke, Kirk Jenkins, R. Rothschild, Robin B. Johansen; Colantuono, Highsmith & Whatley, Michael G. Colantuono, Pamela Graham; Law Offices of Robert S. Gerstein and Robert S. Gerstein for Academy of Appellate Lawyers as Amicus Curiae on behalf of Defendant and Appellant.

Stephanie G. Miller; Deanna F. Lamb; and Linda M Fabian for California Appellate Projects Amicus Curiae on behalf of Defendant and Appellant.

Donna Ziegler, County Counsel, and Samantha N. Stonework-Hand, Deputy County Counsel, for Plaintiff and Respondent.

Anna L. Stuart, under appointment by the Supreme Court, for Minor A.R.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Louise E. Collari
First District Appellate Project
475 14th St., Suite 650
Oakland, CA 94612
(415) 495-3119

Samantha N. Stonework-Hand
Deputy County Counsel
1221 Oak St., Suite 450
Oakland, CA 94612
(510) 272-6718

Anna L. Stuart
Sixth District Appellate Program
95 S. Market St., Suite 570
San Jose, CA 95113
(408) 241-6171