Filed 8/5/24  Gossai v. Frison-Randler CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BOBBY GOSSAI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ZOLETA FRISON-RANDLER, as Trustee, etc.,<br><br>    Defendant and Respondent. | B331110<br><br>Los Angeles County<br>Super. Ct. No.<br>21STCV19414 |

---

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge. Affirmed.

Bobby Gossai, in pro. per., for Plaintiff and Appellant.

Knauss Law Group and Joanne Mirras Knauss for Defendant and Respondent.

---

# INTRODUCTION

This is an appeal from a judgment of dismissal. Appellant Bobby Gossai sued respondent Zoleta Frison-Randler (Randler) individually and as trustee of the Zoleta Frison-Randler Revocable Living Trust. Early in the case, the trial court sustained Randler's demurrer to all causes of action without leave to amend. In Gossai's first appeal, we reversed the judgment of dismissal in part, holding that his complaint adequately stated a cause of action for breach of contract.

Following the issuance of the remittitur in the first appeal, the trial court set the matter for trial on the breach of contract claim. But Gossai refused to comply with the court's pretrial orders and failed to appear at the scheduled pretrial hearings. Accordingly, the court issued an order to show cause regarding dismissal and, after Gossai again failed to appear, the court dismissed the case with prejudice. Gossai appeals. Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. Background; First Appeal

According to the operative complaint, Randler and Mohamed E. Aboselim signed a written agreement (the contract) allowing Aboselim "to join partnership with [Randler] in the property at 22505 Dove Ave[.,] Gerber, CA 96035." The contract stated that Aboselim "will pay the delinquent mortgage fees on the property in the amount of $3,690 to Wells Fargo home mortgage." The contract also stated that each party "will pay thereafter, $615.00 a month an equal share of the mortgage payment until the property is sold" and that title to the property will remain in the name of "Zoleta Frison-Randler" because her

2

ex-husband "[was] still on the loan along with [Randler]." Randler agreed, however, to try to remove her ex-husband's name from the loan, and "submit the necessary legal documents to Wells Fargo home mortgage and have [Aboselim's] name added to the loan." Although not expressly stated in the contract, Randler also agreed to add Aboselim's name to the title. The contract provided that "when the property is sold, [Aboselim] is entitled to the monies that he invested in the property. [Aboselim] will receive 40% and Zoleta Frison-Randler will receive 60%."

As required by the contract, Aboselim "cured the delinquent payments of $3,690.00 and made all the monthly mortgage payments thereafter to the tune of [$]19,000.00" up to October 21, 2019. On September 9, 2019, however, Randler breached the contract by executing a notarized trust transfer deed placing "100% of the said property in [the Zoleta Frison-Randler Revocable Living] Trust and appointed herself as trustee of the Trust" without informing or compensating Aboselim.[1] Further, Randler failed to obtain adequate consideration for the transfer of her interest in the property, and "fraudulently encumbered" and "illegally" seized Aboselim's 40 percent interest in the property. Aboselim did not learn about the transfer until after he had made monthly payments to Randler in September and October 2019. Randler's actions made it difficult for creditors such as Aboselim to collect on the debts owed by Randler. In addition, Randler made no effort in over two years to remove her

---

[1] Although the trust transfer deed was signed and notarized on September 9, 2019, it was not recorded until March 11, 2021. No consideration was paid for the transfer of the deed from Randler to the trust.

3

ex-husband's name from the title and replace it with Aboselim's name. Randler's actions showed "she had no intention to honor" the contract. As a result of Randler's failure to perform her contractual obligations, Aboselim was damaged in the amount of at least $145,090: $122,400 for the value of his 40 percent interest in the property and $22,690 for payments made by him under the contract.

In March 2021, Aboselim assigned his rights and interests in the contract to Gossai (the assignment). In a declaration attached to the complaint, Aboselim stated Gossai "is now the legal and lawful owner of the $22,690.00 plus 40% of [Aboselim's] rights, titles, interest, and benefits in the said property located at 22505 Dove Ave[.]" The assignment reiterates that it included Aboselim's "40% ownership interest in the real property[.]" Gossai informed Randler of the assignment and invited her to resolve the dispute "amicably and reasonably."

In May 2021, Gossai initiated this lawsuit by filing a complaint naming Randler, individually and as trustee of the Zoleta Frison-Randler Revocable Living Trust, as a defendant. The pleading asserts causes of action for breach of written promise/contract, fraud, constructive fraud and inducement, fraudulent conversion, and unjust enrichment. Gossai alleged that as Aboselim's assignee, Gossai could sue Randler under the contract. Gossai also alleged Randler breached the contract by, among other things, not adding Aboselim's name to the title and by placing 100 percent ownership of the property in a trust controlled by Randler without compensating Aboselim for his 40 percent interest and payments through October 2019.

Randler demurred to all causes of action. She argued Gossai's claims were not ripe for adjudication because the

property had not been sold. She also asserted that because the transfer of title to her revocable trust was not a sale, the trust is not an appropriate party to the litigation. As for the first cause of action for breach of contract, Randler emphasized that Gossai "cannot **truthfully** allege" his assignor performed under the contract because Aboselim stopped making payments in 2019. Randler also contended the property was not sold—a condition precedent for her performance under the contract—because a transfer of ownership to a revocable trust is not a change of ownership under section 62 of the Revenue and Taxation Code. As for the second (fraud), third (constructive fraud), and fourth (fraudulent conversion) causes of action, Randler argued the pleading fails to set forth specific facts of any false representation. Finally, according to Randler, the fifth cause of action for unjust enrichment fails because Aboselim breached the contract first by not making additional monthly payments of $615 in 2019. Gossai opposed the demurrer.

In October 2021, the court ruled that the only contract was between Randler and Aboselim—not Randler and Gossai—and that there were no allegations in the complaint stating that Gossai has any contractual rights. The court also ruled that "it is contended that the allegations do not amount to breach of contract and the property has not been sold." As for the other claims, "there are no specific allegations of fraudulent representations made" to Gossai or Aboselim in the complaint, "let alone any conversion." The court sustained the demurrer without leave to amend as to all causes of action. Gossai timely appealed from the subsequent judgment of dismissal.

In a nonpublished opinion, *Gossai v. Frison-Randler* (June 27, 2022, B316075), we held that Gossai stated a claim for

breach of contract and the court erred in sustaining the demurrer to that cause of action. We therefore reversed in part, affirmed in part, and remanded the matter for further proceedings. The remittitur issued on September 14, 2022.

## 2. Proceedings Following Remand

In response to the issuance of our prior opinion and the remittitur, the court set the case for trial on March 27, 2023 and set a final status conference on March 16, 2023. Further, the court ordered the parties to comply with the Superior Court of Los Angeles County, Local Rules, rule 3.25 by filing their joint pretrial pleadings no later than March 9, 2023.

In January 2023, Gossai filed a request for entry of default in light of Randler's failure to file an answer to the complaint. The clerk did not enter Randler's default, however. Instead, the clerk mailed a notice to Gossai stating that his request for entry default had been rejected, explaining: "Per the Ruling by the Court of Appeals [*sic*] the court must prepare a new order reversing the court's previous ruling. The case is still dismissed. Default [cannot] be entered at this time." The rejection notice advised Gossai to resubmit his request for entry of default.[2]

On March 9, 2023, Randler filed a trial brief, a witness list, and an exhibit list. Gossai did not submit any documents relating to the upcoming trial, as ordered. Instead, he submitted a document titled, "REQUEST FOR THE ISSUANCE OF A COURT ORDER [POST REMITTITUR] AND ENTER DEFAULT JUDGMENT AGAINST DEFENDANT(S)[.]" The body of the

---

[2] Randler's unopposed motion to augment the record to include the rejection notice, filed March 13, 2024, is granted.

document states: "Plaintiff respectfully asked this Court to issue its Order [Post Remittitur] and enter Default against Defendant(s).

"POST REMITTITUR:

"1. Court fails to issue its Order [Post Remittitur] (Refer to Default Rejection Sheet);

"2. Defendants failed to file an answer after Remittitur;

"3. Plaintiff requests Default. Default was rejected due to Court's failure to file its order[.] (Ref. Default Rejection Sheet).

"Thus, Plaintiff respectfully asked the Court to issue its Order and enter Default against Defendants."[3]

Randler filed an answer to the complaint on March 13, 2023.

On March 16, 2023, as scheduled, the court called the case for the final status conference. Gossai failed to appear. The court vacated the final status conference, advanced and vacated the March 27, 2023 trial date, and issued an order to show cause regarding dismissal due to Gossai's failure to appear and failure to file required pretrial documents. The court set the hearing on the order to show cause for March 27, 2023.

Gossai filed a response to the order to show cause. He asserted that he was not required to file pretrial documents or appear at any pretrial hearings because Randler was in default and therefore the case could not proceed to trial. He also requested a waiver of his appearance due to a "serious medical and health condition." Randler responded, noting that no default had been entered before she filed her answer to the complaint. On March 23, 2023, the court on its own motion advanced the

---

[3] No ruling on this request appears in the appellate record.

7

date for hearing on the order to show cause and continued it to May 23, 2023.

On May 23, 2023, Gossai again failed to appear. At the request of Randler's counsel, the court ordered Gossai's complaint dismissed with prejudice "due to plaintiff['s] multiple failures to appear and for non-compliance with Local Rule 3.25." The court signed and entered an order of dismissal that day.

Gossai timely appeals.

## DISCUSSION

Gossai appears to contend that because Randler was in default, the court erred by ordering the parties to prepare for trial and sanctioning him for his failure to do so. We reject the argument.

### 1.    Appellant's Burden on Appeal

There are basic rules and principles of appellate practice that govern the types of issues and arguments which may be raised on appeal, the form in which such arguments should be made, and the manner in which the facts should be stated. The most fundamental rule of appellate review is that the judgment or order challenged on appeal is presumed to be correct, and "it is the appellant's burden to affirmatively demonstrate error." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) "All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Further, the parties must present cogent argument and analysis supported by relevant legal authority. "When an issue is unsupported by pertinent or cognizable legal argument it may be

deemed abandoned and discussion by the reviewing court is unnecessary." (*Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699–700.) A point only raised in a perfunctory way, without adequate analysis and authority, is effectively waived. (*People v. Stanley* (1995) 10 Cal.4th 764, 793; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

An appellant has the burden not only to show error but prejudice from that error. (Cal. Const., art. VI, § 13.) If an appellant fails to satisfy that burden, his argument will be rejected on appeal. (*Century Surety Co. v. Polisso* (2006) 139 Cal.App.4th 922, 963.) "[W]e cannot presume prejudice and will not reverse the judgment in the absence of an affirmative showing there was a miscarriage of justice. [Citations.] Nor will this court act as counsel for appellant by furnishing a legal argument as to how the trial court's ruling was prejudicial. [Citations.]" (*Ibid.*) And it is well established that " '[w]hen a litigant is appearing in propria persona, he is entitled to the same, but no greater, consideration than other litigants and attorneys [citations].' [Citations.]" (*Harding v. Collazo* (1986) 177 Cal.App.3d 1044, 1056.)

Gossai's briefs fail to comply with these basic principles of appellate practice. We disregard factual assertions unsupported by citations to the appellate record as well as arguments unsupported by relevant legal authority and address Gossai's only discernable argument.

## 2. The court properly dismissed the case.

Trial courts must monitor civil cases for the purpose of expediting them through the court system. (Gov. Code, § 68607.) To facilitate the timely resolution of civil cases, trial courts may

9

sanction parties for failure to comply with delay-reduction rules or court orders. (Gov. Code, § 68608, subd. (b) ["Judges shall have all the powers to impose sanctions authorized by law, including the power to dismiss actions or strike pleadings, if it appears that less severe sanctions would not be effective after taking into account the effect of previous sanctions or previous lack of compliance in the case. Judges are encouraged to impose sanctions to achieve the purposes of this article."].) Specifically, a court may dismiss an action on its own motion or the motion of a party if counsel, a represented party, or a self-represented party violates local rules designed to reduce delay in civil proceedings. (Code Civ. Proc., §§ 575.1, subd. (a), 575.2, subd. (a); Super. Ct. L.A. County, Local Rules, rules 3.10, 3.25.) Self-represented litigants are entitled to the same, but no greater, rights than represented litigants and are presumed to know the delay-reduction rules. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985; *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 794–795.)

The Los Angeles Superior Court's local rules require litigants to serve and file an exhibit list, jury instruction request, trial witness list, and a proposed short statement of the case at least five days prior to the final status conference and to attend a final status conference. (Super. Ct. L.A. County, Local Rules, rule 3.25(f).) As noted, the court ordered the parties to comply with these requirements and it is undisputed that Gossai did not do so.

A court may impose sanctions, including dismissal, on a party for the failure or refusal to comply with Local Rules so long as the sanctioned party has notice and an opportunity to be heard. (Super. Ct. L.A. County, Local Rules, rules 3.10, 3.25; Code Civ. Proc., § 575.2, subd. (a); *Lee v. An* (2008) 168

10

Cal.App.4th 558, 564–565.) Gossai received both. First, the court's March 16, 2023 minute order, which the clerk mailed to Gossai, indicates that the court issued an "Order to Show Cause Re: Dismissal for plaintiff's failure to appear and failure to comply with Local Rule 3.25 by filing joint final status conference documents." Second, Randler filed and served a notice of ruling summarizing the court's order. The notice explained: "The Court noted that Plaintiff did not file any pre-trial documents, as required by Court Rules. The Court also specifically noted there was no appearance on behalf of Plaintiff." The notice indicated that the court vacated the trial date and set a hearing on the order to show cause on March 27, 2023. Despite receiving adequate notice, however, neither Gossai nor an authorized representative appeared in court on March 27, 2023. The court gave Gossai a second opportunity to be heard by continuing the hearing to May 23, 2023 on its own motion. But Gossai did not appear or send an authorized representative to the continued hearing. Accordingly, the court granted Randler's request to dismiss the case "due to plaintiff['s] multiple failures to appear and for non-compliance with Local Rule 3.25." Given that Gossai purposefully and continually failed to adhere to the court's orders as well as the applicable rules and statutes regarding trial preparation, we conclude the court did not abuse its discretion in dismissing his case.

Gossai's briefs are disorganized, lack citations to the appellate record, and do not include any cogent legal analysis. Given a generous reading, Gossai appears to argue that the court was prohibited from ordering him to comply with trial preparation rules and statutes, and from sanctioning him for his

11

failure to do so, because Randler filed an untimely answer to the complaint and was therefore in default.

Gossai misunderstands the distinction between a party's default and the court's *entry* of default. "Technically, defendants are 'in default' if they fail to file an answer, demurrer or other permitted response within the time allowed by law and without a court order excusing such filing. [¶] By itself, being 'in default' has no legal consequences because defendant can still appear in the action until the clerk has *entered* defendant's default." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2024) ¶¶ 5:2–5:3.)

Although the remittitur in the prior appeal issued in September 2022, Randler did not file an answer until March 2023. The answer was arguably untimely. (Code Civ. Proc., § 472b*; Dye v. Caterpillar, Inc.* (2011) 195 Cal.App.4th 1366, 1381–1382 ["Although section 472b does not address when a defendant must *answer* a complaint deemed sufficient on appeal, a defendant usually has 10 days to answer a complaint once a demurrer is overruled."]; Cal. Rules of Court, rule 3.1320(g) ["[f]ollowing a ruling on a demurrer, unless otherwise ordered, leave to answer or amend within 10 days is deemed granted … "]; rule 3.1320(j)(1) ["[u]nless otherwise ordered, defendant has 10 days to answer or otherwise plead to the complaint or the remaining causes of action following … [¶] … [t]he overruling of the demurrer"].) But because the court never *entered* Randler's default, she was still entitled to participate in the proceedings by, for example, filing an answer to the complaint and the required pretrial documents. And the court was authorized to set the matter for trial on

Gossai's remaining cause of action and to require the parties to prepare for trial.

Gossai maintains, for example, that "the court disposed of the case in a manifested unreasonable, irrational, capricious, and arbitrary manner which undermined its integrity causing the judgment to be irrelevant, absurd and illegitimate since it violated a well-established procedure. The records showed that the judgment was a fraud committed by the court and on the court and Respondent[.] ([Civ. Code, §§] 1572, 1708, 1710[.])" He repeatedly cites, but does not analyze, those statutory provisions and "(Trmann v State Farm Mut. Auto Ins Co (1991) Cal. App. 4th 153, 157; Lazar v Superior Court (1996) 12 Cal.4th, 631, 645." Although we need not evaluate these unsupported assertions, see *Landry v. Berryessa Union School Dist., supra,* 39 Cal.App.4th at pp. 699–700, we address the cited authority briefly.

Civil Code section 1572 defines "actual fraud" and section 1710 defines "deceit," neither of which is at issue here. Civil Code section 1708 provides, "Every person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights." Gossai fails to explain the relevance of this provision and none is evident. We presume Gossai intended to cite *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153.[4] That case discusses the specificity required to plead causes of action for fraud and negligent representation. *Lazar v Superior Court* (1996) 12 Cal.4th. 631, also discusses the pleading requirements for a fraud claim. But because no fraud or negligent misrepresentation claims are at issue in the present case, we fail to see the import of these cases.

---

[4] His citation is misspelled and is missing the reporter volume number.

13

Given that Gossai fails to offer any explanation or analysis, we conclude he has failed to carry his burden to establish prejudicial error on appeal.

## DISPOSITION

The judgment is affirmed. Respondent Zoleta Frison-Randler shall recover her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

BERSHON, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.